WAL MART STORES, INC., Petitioner,

v.

WAYNE TOWNSHIP ASSESSOR, Respondent.

No. 49T10–0206–TA–75.

Tax Court of Indiana.

April 8, 2005.

not present an issue for determination by this Court." *See id.*

Douglas J. Deglopper, Attorney at Law, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Andrew W. Swain, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Wal Mart Stores, Inc. (Wal Mart) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real property for the 2001 tax year. The sole issue before this Court is whether Wal Mart's improvements are entitled to obsolescence depreciation.

### FACTS AND PROCEDURAL HISTORY

In 1999, Wal Mart had owned and operated one of its standard-sized stores in Richmond, Indiana for approximately eight years. That same year, Wal Mart decided to redevelop that site and construct a new Wal Mart Supercenter directly behind the existing store. The development plans called for the old store to be demolished after the new store was completed and open for business.

Construction began on the new store in July of 2000 and was completed by February of 2001. The old store remained open for business while the new store was being constructed and stocked. On March 13, 2001, the old store closed. The new store

opened the following day, March 14, 2001, with demolition of the old store commencing that same day. The old store was completely removed by April 1, 2001.

Because both buildings were standing on the March 1, 2001 assessment date, both were assessed for property tax purposes. The old store was assessed at $2,872,800 and the new store was assessed at $5,619,100. Neither building received an obsolescence depreciation adjustment.

Wal Mart appealed the assessments to the Wayne County Property Tax Assessment Board of Appeals (PTABOA), arguing that both stores were entitled to some measure of obsolescence. The PTABOA upheld the assessments and, on August 8, 2001, Wal Mart filed two Petitions for Review of Assessment (Forms 131) with the State Board of Tax Commissioners (State Board). Wal Mart contended that: (1) the old store was entitled to a 95% obsolescence depreciation adjustment because it only remained standing for thirteen days after the assessment date; and (2) the new store was entitled to a 25% obsolescence depreciation adjustment because it was not open for business until March 14, 2001. The Indiana Board subsequently held a hearing on Wal Mart's Forms 131 and, on May 2, 2002, issued its final determination denying obsolescence for both buildings.[1]

Wal Mart initiated an original tax appeal on June 17, 2002. Both parties agreed to have the case resolved on the basis of their briefs and the stipulated administrative record. The Court heard the parties' oral arguments on January 25, 2005. Additional facts will be supplied as necessary.

## ANALYSIS AND OPINION

### Standard of Review

■■■ This Court gives great deference to final determinations of the Indiana Board. *Wittenberg Lutheran Vill. Endowment Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 782 N.E.2d 483, 486 (Ind. Tax Ct.2003), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND.CODE ANN. § 33–26–6–6(e)(1)–(5) (West Supp.2004–2005). The party seeking to overturn the Indiana Board's final determination bears the burden of proving its invalidity. *Osolo Township Assessor v. Elkhart Maple Lane Assocs., L.P.*, 789 N.E.2d 109, 111 (Ind. Tax Ct.2003).

### Discussion

■■■ "Obsolescence, which is a form of depreciation, is defined as a loss of [property] value and classified as either functional or economic." *Freudenberg–NOK Gen. P'ship v. State Bd. of Tax Comm'rs*, 715 N.E.2d 1026, 1029 (Ind. Tax Ct.1999), *review denied. See also* IND. ADMIN. CODE tit. 50, r. 2.2–10–7(e) (1996). Functional

---

1. The State Board of Tax Commissioners was abolished by the legislature as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the Indiana Board of Tax Review (Indiana Board) was created as the State Board's replacement. *See* IND.CODE ANN. §§ 6–1.5–1–3; 6–1.5–4–1 (West Supp. 2004–2005); 2001 Ind. Acts 198 § 95.

obsolescence is caused by factors internal to the property and is evidenced by conditions within the property itself. *See* 50 IAC 2.2–10–7(e). Economic obsolescence is caused by factors external to the property. *Id.*

■ To establish obsolescence, a taxpayer must make a two-pronged showing: 1) it must identify the causes of the alleged obsolescence; and 2) it must quantify the amount of obsolescence to be applied to its improvement(s). *See Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1241 (Ind. Tax Ct.1998). It is important to recognize, however, that each of these prongs requires a connection to an actual loss in property value. For example, when identifying factors that cause obsolescence, a taxpayer must show through the use of probative evidence that those causes of obsolescence are causing an actual loss of value to its property. *See Miller Structures, Inc. v. State Bd. of Tax Comm'rs*, 748 N.E.2d 943, 954 (Ind. Tax Ct.2001). In the commercial context, this loss of value usually means a decrease in the property's income generating ability. *See id.* at 953. In turn, when the taxpayer quantifies the amount of obsolescence to which it believes it is entitled, it is required to convert that actual loss of value (shown in the first prong) into a percentage reduction and apply it against the improvement's overall value. *See Clark*, 694 N.E.2d at 1238.

### I. The Old Store

■ Wal Mart claims that its old store is entitled to a 95% obsolescence deprecia-

tion adjustment because it only remained standing for thirteen days after the assessment date. More specifically, Wal Mart contends that because the store was only days away from demolition, and because it was going to be replaced by a bigger, newer store, it was both functionally and economically obsolete and therefore had only a "minimal salvage value." (Pet'r Br. at 5.)

Assuming *arguendo* that Wal Mart has shown valid causes of obsolescence in the old store, it has still failed to meet its burden of tying those causes to an actual loss in value and properly quantifying the obsolescence it seeks.[2] *See Clark*, 694 N.E.2d at 1241 (stating that once a taxpayer has identified causes of obsolescence, he must "present[ ] probative evidence that would support a quantification of obsolescence at the administrative level") (footnote added). Wal Mart claims that the old store's value was merely salvage; however, it offers no support for its conclusion that salvage value corresponds to a 95% obsolescence adjustment.[3] Indeed, it appears that Wal Mart has arrived at this figure solely through guesswork and estimation. (*See* Pet'r Br. at 11 (stating that "*it is doubtful* that the pile of [ ] debris and rubble from this site could have any value which would exceed 5% of [its] assessed value[.]" As a result, an obsolescence factor of 95% *would seem to be* entirely reasonable and justifiable under the circumstances") (emphases added).)

Pulling a number out of thin air is not a valid method of quantifying obsolescence.

**2.** Wal Mart appears to be advancing two arguments regarding causes of obsolescence in the old store: (1) the store was demolished because it had become obsolete; and (2) the store was obsolete because it was scheduled for demolition. There is no need, however, for the Court to sort through these arguments since Wal Mart has failed to properly quantify the obsolescence it seeks.

**3.** Indiana's assessment manual defines salvage value as "the price one would be justified in paying for an item of property to be removed from the premises and used elsewhere." IND. ADMIN. CODE tit. 50, r. 2.2–1–54 (1996).

Rather, Wal Mart was required to show, through the use of generally recognized appraisal principles, how it arrived at 95%. *See, e.g., Meridian Towers East & West, LLC v. Washington Township Assessor,* 805 N.E.2d 475, 479 (Ind. Tax Ct.2003); *Canal Square Ltd. P'ship v. State Bd. of Tax Comm'rs,* 694 N.E.2d 801, 807 (Ind. Tax Ct.1998) (both cases holding that the taxpayer established a prima facie case where it provided an appraisal quantifying obsolescence in accordance with generally recognized appraisal principles). No such showing has been made here.

Wal Mart may, indeed, have a meritorious argument that because the old store was about to be demolished, it was entitled to some measure of obsolescence. Nonetheless, because it failed to take that argument one step further by properly quantifying the obsolescence to which it was entitled, Wal Mart's obsolescence claim on the old store is fatally deficient. *See Hoogenboom–Nofziger v. State Bd. of Tax Com'rs,* 715 N.E.2d 1018, 1025–26 (Ind. Tax Ct.1999).

## II. The New Store

■ Wal Mart contends that its new store is entitled to 20% obsolescence because it was not open, and therefore not generating income, on the assessment date.[4] (*See* Pet'r Br. at 12 (footnote added).) This Court has previously held, however, that "to allow for an obsolescence adjustment merely because a building is vacant while it is under construction would lead to palpably absurd results." *Pedcor Investments–1990–XIII, L.P. v. State Bd. of Tax Comm'rs,* 715 N.E.2d 432, 440 (Ind. Tax Ct.1999). After all, a building cannot possibly be obsolete when its useful life has not yet begun. It is true, as Wal Mart notes, that a store that is not yet open for business cannot generate income. Nevertheless, when construction on the store began, it was not generating income. Consequently, from the date of the beginning of construction until the assessment date, the new store did not suffer a loss of income-generating ability since it never generated income in the first place. *See id.* Therefore, the fact that the new store was not yet open for business is not evidence of an actual loss of value and no obsolescence adjustment is warranted.[5] *See id.* (footnote added).

## CONCLUSION

Wal Mart characterizes this case as a "difficult" one. (*See* Pet'r Br. at 6; Oral Argument Tr. at 3.) It is, however, both simple and straightforward. Both buildings were standing on the March 1, 2001 assessment date; therefore, both buildings should have been assessed. *See* IND.CODE ANN. § 6–1.1–2–1 (West 2001) (providing that "all tangible property which is within the jurisdiction of this state on the assessment date of a year is subject to assessment and taxation for that year"). Wal Mart's business judgment in having both

4. At different stages of the appeals process, Wal Mart has requested different amounts of obsolescence to be applied to the new store. Before the PTABOA, Wal Mart made no specific request for the new store. (*See* Cert. Admin. R. at 18–19.) In its Form 131 petition to the State Board, Wal Mart requested 25% obsolescence. (Cert. Admin. R. at 17.) At the administrative hearing, however, Wal Mart requested only 15% obsolescence. (Cert. Admin. R. at 120.) Now, for purposes of its tax appeal, Wal Mart has settled on a request of 20%. (Pet'r Br. at 12.)

5. Likewise, the fact that the store was only open for nine and a half months during the 2001 tax year does not demonstrate a loss in value that would warrant an obsolescence adjustment. (*See* Pet'r Br. at 12.) As previously explained, the store suffered no loss in value during the two and a half months before it opened.

stores standing on the assessment date is not, by itself, a cause for obsolescence.[6] Moreover, even assuming that Wal Mart showed valid causes of obsolescence resulting from this situation, it completely failed to quantify the obsolescence it sought. Accordingly, Wal Mart's requests for obsolescence on both the old and new stores are therefore denied.

For the foregoing reasons, the Court AFFIRMS the final determination of the Indiana Board valuing Wal Mart's property for the 2001 tax year.

6. The Court notes that not only did Wal Mart have notice of the March 1 assessment date, the Wayne Township Assessor also attempted to help Wal Mart out by "encourag[ing] them to do whatever they could to get the old [store] down before March 1 or at least be in the process of demolition." (Cert. Admin. R. at 130.) Indeed, as early as December, the Assessor was in contact with Wal Mart officials, notifying them that if they had even begun the demolition process by March 1, the old store would not be assessed. (*See* Cert. Admin. R. at 129–30.) Regardless of this advice, however, an internal Wal Mart memorandum shows that as of January 9, 2001, Wal Mart's scheduled demolition date for the old store was still March 14. (*See* Cert. Admin. R. at 75.)