Travis Michael SCOTT, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0505–CR–240.

Court of Appeals of Indiana.

Jan. 13, 2006.

Transfer Denied March 9, 2006.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

FRIEDLANDER, Judge.

With permission to bring a belated appeal, Travis Michael Scott appeals his forty-year sentence imposed after his guilty plea to class A felony robbery. Scott raises one issue for review. As restated, the issue is: Did the trial court err in sentencing Scott by relying upon an improper aggravating factor and by failing to find that Scott's guilty plea and his mental illness constituted mitigating factors? [1]

We affirm.

The facts reveal that on December 7, 2002, Scott approached Bruce Carter outside of a bar in Mishawaka, Indiana. Scott pointed a gun at Carter and told Carter to give him his money. Carter gave Scott the money in his pocket. Scott said: "I got to shoot you for two dollars and some change." *Sentencing Transcript* at 2–3. Scott then shot Carter in the chest. Carter nearly died and incurred out-of-pocket hospital expenses in the amount of $1,102.96. On February 6, 2003, Scott was charged with one count of robbery, as a class A felony.

On July 21, 2003, Scott pleaded guilty. Upon inquiry by the trial court, Scott stated that he was twenty-one years old, had been in jail for seven and one-half months, that during his incarceration he had been treated by a doctor or psychiatrist, that at the time of the guilty plea hearing he was taking medications for

"Bipolar, manic depressant (sic), and . . . [hearing] things." *Guilty Plea Transcript* at 2. Upon additional questioning by the trial court, Scott denied that the medication would impair his ability to understand the proceedings. The transcript of the hearing demonstrates that Scott participated in the hearing and answered appropriately to all inquiries. Further, Scott asked for clarification of some matters. Also, the trial court informed Scott that he was not eligible for a suspended sentence.[2]

Scott's sentencing hearing was held on August 20, 2003. The presentence investigation report disclosed that Scott was twenty years old at the time of the offense. He had maintained consistent contact with the juvenile court system from the time he was 15–years old, including the commission of acts that would have been considered class D felonies if committed by an adult. As to true findings for battery in 1999, the report indicated that in June 2000, "the defendant successfully completed anger management, but failed substance abuse treatment." *Appendix* at 20. Also, in September 2000, the report noted that Scott "failed community service, drug testing, and part-time employment." *Id.* At the time that the present offense was committed, Scott was on probation for two separate adult convictions: possession of marijuana in February 2002, and attempted theft, as a class A misdemeanor in August 2002.

1. Scott does not raise any issues under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

2. The trial court stated that Scott was not eligible for less than the *presumptive* sentence because he was on probation at the time he committed the instant offense. It appears that the trial court misspoke. Ind.Code Ann. § 35–50–2–2(b) (West 2001) provided: "With respect to the following crimes listed in this subsection [including robbery with serious

bodily injury or with a deadly weapon], the court may suspend only that part of the sentence that is in excess of the minimum sentence." At the time that Scott committed the instant offense, the minimum term of imprisonment for a class A felony was 20 years. *See* I.C. § 35–50–2–4 (West 1995). Our analysis reveals that the misstatement would have no impact upon Scott's sentence, especially in light of Scott's concession that the presumptive sentence would be appropriate.

The report contained the following narrative of the present offense provided by Scott's probation officer:

On August 4, 2003, the defendant was interviewed at the St. Joseph County Jail. The defendant stated he planned to rob someone at the bar. The defendant stated he randomly selected the victim and held a gun to him to retrieve the money and when the victim threw a dollar at him and would not pick it up he shot the victim. The defendant stated he realizes now it was stupid and wishes he wouldn't have done it.

*Id.* at 23.

The report also noted that Scott self-reported substance abuse and poor mental health with diagnoses of ADHD and bipolar explosive disorder. He stated that he had attempted suicide approximately thirty times within the year. A document within the record demonstrated that Scott's claim that he received Social Security Disability Income for Oppositional Defiant Disorder and Bi–Polar Disorder was verified with the Social Security Administration.

At his sentencing hearing, as required by the plea agreement, the State made no recommendation as to sentencing. Scott's counsel, in large part, devoted his argument to a discussion of Scott's mental illness. Counsel acknowledged the existence of "certain aggravating factors," but argued that Scott's "mental health issues and his youth are mitigating factors." *Sentencing Transcript* at 5. No argument was made that Scott's decision to plead guilty should be considered as a factor in mitigation of his sentence. His counsel urged that the "standard sentence for this offense is appropriate." *Id.*

The trial court entered the following oral sentencing statement:

The Court does find a juvenile record here with one adjudication, a history of some adult misdemeanor involvements, and the Court recognizes the nature and circumstances of the offense here, and the Court finds those matters to be aggravating circumstances. The Court finds no mitigating circumstances.

Accordingly, the Court will impose a sentence of 40 years, which is not suspended. The defendant has credit for 183 days served. Find him indigent as to fine and court costs.

The Court will enter a restitution judgment to be supplied by the State in the amount of $1,102.96, in favor of the victim, Mr. Bruce Carter.

*Id.* at 7.[3]

Scott contends that the trial court erred by failing to recognize two mitigating factors when it imposed an enhanced sentence of forty years: his mental illness and his decision to plead guilty. Thus, according to Scott, this court should remand the cause for resentencing. Scott also contends, in the alternative, that the sentence he received was inappropriate in light of the nature of the offense and his character. Thus, the court erred by finding that the nature and circumstances constituted an aggravating factor, and, accordingly, we should exercise our authority to revise his sentence to the presumptive sentence of thirty years.

The Indiana Constitution article VII section 4, allows us to review and revise sentences "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the char-

---

**3.** The trial court's written "Judgment of Conviction & Sentencing Order" contains nearly identical wording. *Appendix* at 8.

acter of the offender." *See Frye v. State*, 837 N.E.2d 1012, 1014 (Ind.2005). We recognize, however, the special expertise of the trial courts in making sentencing decisions; thus, we exercise with great restraint our responsibility to review and revise sentences. *Kendall v. State*, 825 N.E.2d 439 (Ind.Ct.App.2005).

 At the time of the offense, the statute governing sentences for class A felonies provided:

> A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances; . . . .

Ind.Code Ann. § 35–50–2–4 (West 1995). Here, the trial court relied upon two aggravating factors to enhance Scott's sentence by ten years: Scott's juvenile court and adult misdemeanor adjudications, and the nature and circumstances of the offense. Scott urges that the nature and circumstances, without additional elaboration, should not be considered a valid aggravator. Also, as noted above, Scott urges that the trial court erred by failing to find two mitigators: his poor mental health, and his decision to plead guilty.

> If the trial court relies on aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances.

4. We note also that the legislature revised Indiana's sentencing statutes to eliminate "presumptive sentences" and establish "advi-

*Cotto v. State*, 829 N.E.2d 520, 523–24 (Ind.2005).[4]

Our analysis must begin with the observation that the trial court failed to articulate its reasoning, balancing, and evaluation of the aggravating factors. *Cf. id.* We turn to a discussion of the aggravating factors.

 If an aggravating circumstance found by the trial court is invalid, the reviewing court must decide whether the remaining circumstance or circumstances are sufficient to support the sentence imposed. *Cotto v. State*, 829 N.E.2d 520. When the reviewing court finds an irregularity in a trial court sentencing determination, we have at least three courses of action: 1) "remand to the trial court for a clarification or new sentencing determination", 2) "affirm the sentence if the error is harmless", or 3) "reweigh the proper aggravating and mitigating circumstances independently at the appellate level." *Id.* at 525. Our analysis reveals that errors occurred, the errors are harmless, and the record is sufficient to allow our independent evaluation of the aggravating and mitigating circumstances. Accordingly, we choose not to remand the cause.

 Although not specifically challenged by Scott, the criminal history aggravator was based upon juvenile adjudications and misdemeanor convictions. We note that acts by juveniles that would have constituted a criminal offense if committed by an adult may be used to support an enhanced sentence. *McCray v. State*, 823 N.E.2d 740 (Ind.Ct.App.2005). As stated in the facts, Scott had maintained consistent contact with the juvenile courts for a variety of matters—some of which would have been felonies if committed by an

sory sentences." *See* P.L. 71–2005 (effective April 25, 2005).

adult—from the time he was fifteen years old until he reached majority.

Further, Scott's criminal history reveals that upon reaching majority, he had a consistent and steady record of criminal activity. Here, Scott had three adult misdemeanor convictions in 2002, prior to the present offense that occurred in December 2002. *See Cotto v. State*, 829 N.E.2d at 526 (the significance of misdemeanor convictions "varies based on the gravity, nature and number of prior offenses as they relate to the current offense"). Scott's January 2002 arrest for criminal conversion resulted in a conviction and a term of probation. Scott's February 2002 arrest for possession of marijuana resulted in a conviction and a petition to revoke his probation. His August 2002 arrest on five counts resulted in a conviction for attempted theft, sentenced as a class A misdemeanor, and a term of probation. The fact that Scott was on probation for two of those offenses when he committed the instant offense is a matter that the court could properly consider in enhancing Scott's sentence to a term above the presumptive. *See Morgan v. State*, 829 N.E.2d 12 (Ind.2005).

Though not articulated by the trial court, taking these factors together it is apparent that Scott's arrest record and criminal history served as a valid aggravating factor. Scott had a lengthy and consistent record of criminal activity indicating a likelihood that he would reoffend. He had a lengthy and consistent record of juvenile adjudications, including at least one that would have been a felony if committed by an adult. He had three misdemeanor convictions within a few months of the present offense, and he was on probation for two of those offenses at the time he committed the robbery. The aggravator is entitled to great weight under these circumstances.

As to the court's finding that the nature and circumstances of the crime constituted an aggravating factor, the trial court did not include any elaboration. As such, the efficacy of that aggravator is not immediately apparent from the trial court's statement. The gravity of this aggravator, however, is immediately apparent from the factual basis at the guilty plea hearing, the presentence report, and the argument presented at the sentencing hearing. The facts acknowledged by Scott are short and disturbing. He randomly chose a victim to rob at gunpoint and shot the victim in the chest, nearly killing him, after the victim acceded to Scott's demand for money. The nature and circumstances reveal that Scott acted brutally and without regard for human life. While a court may not use a factor constituting a material element of an offense as an aggravating circumstance, it may look to the particularized circumstances of the criminal act. *Henderson v. State*, 769 N.E.2d 172 (Ind. 2002). The record discloses that the particularized circumstances of the offense constitute an aggravating factor of high weight.

We turn to a discussion of the mitigating factors. As noted, subject to certain legal constraints, sentencing determinations are generally committed to the trial court's discretion. *See Estes v. State*, 827 N.E.2d 27 (Ind.2005). That is true also with respect to the finding of mitigating factors. *Id.* A trial court is not obligated to weigh or credit mitigating factors in the manner a defendant suggests. Nevertheless, if it fails to find a mitigator clearly supported by the record, a reasonable belief arises that the mitigator was improperly overlooked. *Id.*

Indiana courts have long held that a defendant who pleads guilty extends a benefit to the State and accepts some re-

sponsibility for the crime; thus, the defendant deserves to have some mitigating weight extended to him at sentencing based upon the plea. *See Cotto v. State*, 829 N.E.2d 520 (citing, *Widener v. State*, 659 N.E.2d 529 (Ind.1995); *Scheckel v. State*, 655 N.E.2d 506 (Ind.1995); *Williams v. State*, 430 N.E.2d 759 (Ind. 1982)). Here, the trial court did not mention the guilty plea or explain that it should not be accorded mitigating weight under the particular circumstances. Although Scott did not explicitly argue that his guilty plea deserved mitigating treatment, we cannot say that the matter is waived.

▆▆ In *Francis v. State*, 817 N.E.2d 235 n. 2 (Ind.2004), our Supreme Court noted that the defendant's failure to argue that his guilty plea should·be considered as a mitigating circumstance is not subject to the normal waiver considerations, inasmuch as the trial court is inherently aware that a guilty plea is a mitigating factor. Such is the case here. Accordingly, Scott was entitled to have some mitigating weight extended to his guilty plea.

▆▆ Our Supreme Court recently observed that a guilty plea is not necessarily a significant mitigating factor. *See Cotto v. State*, 829 N.E.2d 520. Although the State received some benefit from the saved expense of a bench or jury trial on the class A felony robbery charge, we note that Carter survived the shooting during the robbery and could have almost certainly identified Scott as the robber/shooter, as he did implicitly during his statement to the trial court at the sentencing hearing.[5] Therefore, we do not attribute significant weight to Scott's guilty plea as a mitigating factor.

▆▆ Scott urges that his documented mental illness is a significant factor in mitigation of his sentence. We acknowledge that, in large part, he devoted his sentencing argument to his mental illness, yet, the trial court failed to explain that it considered Scott's mental illness in any manner.

▆▆ We note here that depending upon the sentencing goals, mental illness can be considered a mitigating factor or an aggravating factor.[6] Based upon Indiana Const. art. I §§ 16 and 18, our courts have determined that the overarching goal of our sentencing scheme is to provide a defendant with "an opportunity for rehabilitation where reasonably possible." *See, e.g., Schweitzer v. State*, 700 N.E.2d 488, 490 (Ind.Ct.App.1998) (quoting *Fointno v. State*, 487 N.E.2d 140, 144 (Ind.1986)). Our courts have also recognized that such is not always reasonably possible; thus, the death penalty does not violate the goal of rehabilitation—it merely recognizes that in certain cases the goal cannot be achieved. *See, e.g., Ritchie v. State*, 809 N.E.2d 258, 262 (Ind.2004) ("Any change in the settled doctrine that the penalty is not inherently unconstitutional should be by constitutional amendment.").

---

5. We note that the *Guilty Plea Transcript* at 4 reveals that Scott specifically agreed in his guilty plea to allow the victim to address the court.

6. The predominate sentencing theories, retributive (just deserts) and utilitarian sentencing purposes, might approach the question such that a different result would obtain. *See, e.g.,* Frase, Punishment Purposes, 58 STAN. L.REV. 67 at *http://www.stanford. edu/lawre-view/content/ sentencing/Frase.pdf.* (last visited on December 9, 2005). In a retributive scheme mental illness might be a mitigating factor due to a lesser blameworthiness. *Id.* In a utilitarian scheme mental illness might be an aggravating circumstance by eschewing defendant's blameworthiness in favor of advancing society's goal of protecting the masses from erratic and uncontrolled criminal behavior.

In *Ankney v. State*, 825 N.E.2d 965, 973 (Ind.Ct.App.2005), we stated that our Supreme Court:

> has identified four factors "that bear on the weight, if any, that should be given to mental illness in sentencing." Those factors are: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime.

(Citations omitted.)

In this case, Scott suffers from at least one documented mental illness: Bipolar Disorder. The record also discloses that Scott has received treatment for his condition and that he was on medication at the time of his guilty plea. The record discloses that he had completed aspects of certain probationary conditions including an anger management program. Although he intimated such, Scott never stated that he committed the present offense because his treatment lapsed, his medication failed, or that his condition was not controlled by medication. Moreover, his responses and questions at his guilty plea hearing were completely appropriate and indicated a high level of functioning. Other than the possible implications of his lengthy list of arrests, adjudications, and adult convictions, it appears that Scott was capable of controlling his behavior, did not have significant limitations on his functioning, and failed to identify a nexus between his mental illness and the instant offense. While it was error for the trial court to fail to explain any evaluation it conducted as to this potential mitigating circumstance, such was harmless under these circumstances. We find that Scott's mental illness should have been accorded little weight as a mitigating factor.

Thus, the failure to identify the proffered and inherent mitigating factors, constituted error.[7] The error is harmless here because the record supports the finding of the two aggravating circumstances identified by the trial court. Further, the mitigating circumstances that the trial court failed to identify were to have been accorded little weight. Accordingly, we can state with confidence that the trial court would have imposed the same sentence if it considered the proper aggravating and mitigating circumstances. *See Neale v. State*, 826 N.E.2d 635 (Ind.2005); *Hart v. State*, 829 N.E.2d 541 (Ind.Ct.App. 2005).

Judgment affirmed.

VAIDIK, J., and SULLIVAN, J., concur.

---

7. We acknowledge that Scott expressed remorse. Expressions of remorse may be considered as a valid mitigating circumstance. *See Estes v. State*, 827 N.E.2d 27. In this case, given the nature of the crime—the nearly fatal, unprovoked shooting of a randomly selected victim after the victim complied with Scott's robbery demand, the sincerity of Scott's expression of remorse made during his sentencing is entitled to slight weight as a mitigating factor.