NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PHOENIX CEMENT COMPANY, *Plaintiff/Appellant*,

*v.*

YAVAPAI COUNTY, a political subdivision of the State of Arizona,
*Defendant/Appellee*.

No. 1 CA-TX 14-0010
FILED 10-22-2015

Appeal from the Arizona Tax Court
No.  TX2011-000018 and TX2011-000751
(Consolidated)
The Honorable Dean M. Fink, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Lewis Roca Rothgerber, LLP, Phoenix and Tucson
By Susan M. Freeman, Rob Charles, Justin James Henderson
*Counsel for Plaintiff/Appellant*

Helm, Livesay, & Worthington, LTD, Tempe
By Roberta S. Livesay
*Counsel for Defendant/Appellee*

Cavanagh Law Firm, Phoenix
By James G. Busby, Jr.
*Counsel for Amicus Curiae Arizona Rock Products Association*

### MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Lawrence F. Winthrop joined.

**G O U L D**, Judge:

**¶1**　　　　Phoenix Cement Company appeals the tax court's decision adopting the Yavapai County Assessor's valuation of its property for tax years 2010 and 2011. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

**¶2**　　　　Phoenix Cement manufactures cement at its plant in Clarkdale, Arizona. The Assessor values the machinery and equipment at the plant as personal property. Phoenix Cement timely challenged the Assessor's full cash values of its property for tax years 2010 and 2011. After exhausting its administrative remedies, Phoenix Cement appealed the value of its property to tax court.[1]

**¶3**　　　　The court held a four-day bench trial. Phoenix Cement supported its proposed reduction in full cash value through the testimony of its expert appraiser, Dennis Neilson**.** Neilson testified that he valued the property using the cost approach to value, which is the same method the County used. Unlike the County, however, Neilson concluded there was significant economic obsolescence, resulting from the recession's impact on the cement industry, which reduced the value of the property.

---

[1]　　For tax year 2010, the Assessor assigned a full cash value of $117,159,730 to Phoenix Cement's property. Phoenix Cement filed an administrative appeal and the County Board of Equalization reduced the value to $111,320,743. Phoenix Cement further appealed the Board's decision to tax court. For tax year 2011, the Assessor valued the property at $118,415,787. Phoenix Cement again filed an administrative appeal, but this time the Board affirmed the Assessor's valuation. Thereafter, Phoenix Cement appealed to tax court, and the two matters were consolidated.

¶4    After making specific findings of fact and conclusions of law, the tax court upheld the County's determinations of full cash value and rejected Phoenix Cement's proposed reduction in full cash value based on economic obsolescence.  The tax court also permitted the County to add to its valuation certain "escaped property" that Phoenix Cement had allegedly not reported, and  assessed penalties and interest relating to the escaped property.[2]

¶5    Thereafter, the tax court entered judgment in favor of the County, and this appeal followed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1)(2015).[3]

## DISCUSSION

¶6    In reviewing a judgment entered after a bench trial, we view the evidence in the light most favorable to upholding the trial court's decision. *Double AA Builders, Ltd. v. Grand State Const. L.L.C.*, 210 Ariz. 503, 506, ¶ 9 (App. 2005).  We will not set aside the tax court's findings of fact unless they are clearly erroneous or not supported by substantial evidence. *Nordstrom, Inc. v. Maricopa Cnty.*, 207 Ariz. 553, 558, ¶ 18 (App. 2004).  We review pure questions of law and mixed questions of law and fact de novo. *Eurofresh, Inc. v. Graham Cnty.*, 218 Ariz. 382, 385, ¶ 14 (App. 2007).

¶7    Taxpayers in Arizona have a duty to self-report personal property to the county assessor.  *See* A.R.S. § 42-15053.   Using the information reported by the taxpayer, the assessor values the property by determining the "acquisition cost less any appropriate depreciation as prescribed by tables adopted by the [Arizona Department of Revenue]." A.R.S. § 42-13054(A).  Pursuant to A.R.S. § 42-13054(A), the taxable value of personal property determined by the assessor "shall not exceed the market value." *Id.*

¶8    If a taxpayer believes the assessor's valuation exceeds market value, the taxpayer has a right to appeal.  *See* A.R.S. §§ 42-16201, -16203, -16207, -19051, -19052. However, in challenging a taxing authority's

---

[2]    After adding the value of the escaped property, the County calculated the full cash value of Phoenix Cement's property to be $152,541,721 for tax year 2010 and $148,842,874 for tax year 2011.

[3]    Absent material revisions after the relevant dates, we cite the current version of a statute unless otherwise indicated.

valuation of property, the taxpayer has the burden of proving that "the assessment is excessive" and must present evidence "from which the trial court can determine the full cash value of the property in question." *Graham Cnty. v. Graham Cnty. Elec. Co-op., Inc.*, 109 Ariz. 468, 469-70 (1973).

**¶9**      In this case, Phoenix Cement reported the cost of its personal property for tax years 2010 and 2011 to the Assessor who, in turn, determined the taxable value by calculating acquisition cost less depreciation. At trial and on appeal, Phoenix Cement challenges the Assessor's valuations, asserting that his valuations for 2010 and 2011 exceeded market value. Specifically, Phoenix Cement argues the tax court erred in:

1. Refusing to adopt Phoenix Cement's proposed value reduction based on economic obsolescence;

2. Permitting the County's tax auditor to testify as an expert;

3. Permitting the County to add "escaped property" to the pending tax court appeal; and

4. Assessing penalties and interest.

## I. Economic Obsolescence

**¶10**      As the tax court properly noted, "[b]y far, the greatest difference between the valuations of the two parties' experts is the existence or non-existence of economic obsolescence." Economic obsolescence is defined as:

> [T]he loss in value or usefulness of a property caused by factors external to the asset. These factors include increased cost of raw materials, labor, or utilities . . . ; reduced demand for the product; increased competition, environmental or other regulations; or similar factors.

American Society of Appraisers, *Valuing Machinery and Equipment: The Fundamentals of Appraising Machinery and Technical Assets* 76 (3d ed. 2011)[4] (emphasis added). This court similarly has defined economic obsolescence as "a loss in value caused by forces external to the property and outside the control of the property owner." *Ariz. Dep't. of Revenue v. Questar S. Trails*

---

[4]      Both parties rely on this source as an authoritative treatise.

*Pipeline Co.*, 215 Ariz. 577, 580, ¶ 12 (App. 2007) (*quoting Magna Inv. & Dev. Corp. v. Pima Cnty.*, 128 Ariz. 291, 293 (App. 1981)). Additionally, in *Eurofresh, Inc. v. Graham Cnty.*, 218 Ariz. 382 (App. 2007), we defined the term as "a temporary or permanent impairment of the utility or salability of an improvement or property due to negative influences outside the property."[5] 218 Ariz. at 386, ¶ 22 (*quoting* Appraisal Institute, *The Appraisal of Real Estate* 363 (12th ed. 2001)).

¶11 Here, the County's valuation of the property did not account for economic obsolescence beyond what may arguably be encompassed in the ADOR depreciation tables. Conversely, Phoenix Cement's expert opined that the economic recession, which resulted in decreased demand for cement, caused significant economic obsolescence that decreased the value of the plant. Specifically, in appraising the property, Neilson applied a 50% "economic obsolescence penalty" to the property's value for tax year 2010, reducing the value of the property by half, and a 60% penalty for tax year 2011, reducing the value of the property by more than half.[6]

¶12 This court addressed the application of economic obsolescence to property valuation in *Eurofresh.* We held that for a taxpayer to establish the existence of economic obsolescence, the taxpayer must offer probative evidence of (1) the cause of the obsolescence, (2) the quantity of the obsolescence, and (3) that the asserted cause of the obsolescence actually affects the subject property. *Id.* at 390, ¶ 37. In developing this test, we relied upon a decision from an Indiana court explaining that a taxpayer must establish "a connection to an actual loss in property value," which in cases involving commercial property "usually means a decrease in the property's income generating ability." *Id.* at 388, ¶ 29 (*citing Wal Mart Stores, Inc. v. Wayne Twp. Assessor*, 825 N.E.2d 485, 488 (Ind. T.C. 2005)).

¶13 At trial, Phoenix Cement attempted to satisfy the *Eurofresh* test by offering evidence of economic obsolescence. Specifically, Neilson testified that the plant's economic obsolescence was caused by "the

---

[5] In their joint pretrial statement, the parties agreed to adopt the definition of economic obsolescence set forth in *Eurofresh.*

[6] As a result, Neilson opined the full cash value of Phoenix Cement's property for tax year 2010 was $86 million without incentives, and $75 million with incentives. Neilson's valuation of the property for tax year 2011 was $68 million without incentives, and $57.5 million with incentives.

significant loss in demand for cement" during the recession.  In support of this opinion, Nielson produced evidence showing the impact of the recession on the cement industry.  Thereafter, Neilson attempted to quantify the obsolescence through application of an inutility penalty formula.[7]  Finally, Neilson offered evidence that the recession, the cause of the economic obsolescence, affected production at the Phoenix Cement plant.

¶14        After considering Phoenix Cement's evidence, the tax court concluded that "Plaintiff's expert's opinion of alleged external obsolescence is not persuasive."  The tax court found that "[t]o the extent Plaintiff's expert considered the economic obsolescence to be temporary, he failed to properly account for the temporary nature in reaching his conclusion."

¶15        We defer to the tax court's findings as long as the record supports them. *In re the Gen. Adjudication of All Rights to Use Water in the Gila River Sys. & Source,* 198 Ariz. 330, 337, ¶ 15 (2000); *see also* Ariz. R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.").  Additionally, the weight accorded expert testimony is within the sole province of the trial court.  *Magna Inv. & Dev. Corp. v. Pima Cnty.*, 128 Ariz. 291, 294 (App. 1981).

¶16        Our review of the record confirms the tax court did not abuse its discretion in determining that Neilson's testimony was not persuasive in establishing the amount of obsolescence proposed.  *See Flores v. Cooper Tire & Rubber Co.*, 218 Ariz. 52, 57, ¶ 20 (App. 2008) (holding that this court reviews questions hinging on the resolution of conflicting facts or witness credibility for an abuse of discretion).  The tax court's finding is supported

---

[7]        In *Valuing Machinery and Equipment*, the inutility penalty is described as follows:

> Whenever the operating level of a plant or an asset is significantly less than its rated or design capability, and the condition is expected to exist for some time, the asset is less valuable than it would otherwise be.  Such a penalty for inutility can be a measure of the loss in value for this form of economic obsolescence.

American Society of Appraisers, *Valuing Machinery and Equipment:  The Fundamentals of Appraising Machinery and Technical Assets* 97 (2d ed. 2005).

by the testimony of Phoenix Cement's vice president of finance, who testified that the company would *not* have sold the plant on the valuation dates for Neilson's proposed values because the company anticipated that "the growth is going to come back and that [the] plant has a value that's much higher than the current day value that we're trying to obtain." The vice president's observation suggests that Neilson's proposed values were lower than market value and supports the tax court's conclusion that Neilson did not account for the temporary nature of the obsolescence in determining the value of the plant.

¶17 The tax court also found that "Plaintiff's expert's choice of 2005 as the year in which to begin his economic obsolescence analysis was not supported by the evidence, and skewed the economic obsolescence findings significantly in the taxpayer's favor." Again, the record supports the tax court's finding. The evidence shows that 2005 was "the very best year of actual production" for the plant.

¶18 Finally, the record shows Neilson did not explain how the decrease in cement production affected the cement plant's income generating ability; indeed, the record contains no such evidence.

¶19 In sum, the record supports the tax court's finding that Phoenix Cement failed to satisfy its burden of proving that the County's assessment was "excessive" based on economic obsolescence. *Graham Cnty.*, 109 Ariz. at 469-70. Accordingly, we affirm the tax court's conclusion that Phoenix Cement is not entitled to a reduction in full cash value for tax years 2010 and 2011.

¶20 However, we note that to the extent the tax court's ruling could be interpreted to mean that Arizona law does not support the application of temporary economic obsolescence, we vacate that portion of the ruling. We confirm our decision in *Eurofresh* stating that taxpayers have the right to establish both temporary and permanent economic obsolescence by satisfying *Eurofresh's* three-part test. *Eurofresh*, 218 Ariz. at 386, ¶ 22.

**II. Admission of Boone's Expert Testimony**

¶21 The County's expert, Kirk Boone, testified at trial regarding the "escaped property" that Phoenix Cement allegedly failed to report. He also testified in support of the County's calculation of full cash value, which

involved the application of depreciation tables, prepared by the Arizona Department of Revenue, to the acquisition cost of the property.[8]

¶22        Phoenix Cement filed a motion in limine seeking to exclude Boone's testimony and reports on the grounds Boone lacked "the knowledge, skill, experience, training, or education necessary to testify as to the market value of the cement plant" and because he "failed to rely on accepted standard appraisal methods and techniques." The tax court denied the motion stating: "The Court is not persuaded that Mr. Boone failed to apply accepted standard appraisal methods. How well he applied them goes to the weight which the Court as factfinder will place on his opinions." On appeal, Phoenix Cement asserts that the tax court "erred by permitting the County's auditor to testify as a valuation expert."[9]

¶23        "The question of whether any witness, whether or not designated 'expert' is competent to testify on a given subject rests in the sound discretion of the trial court, and its exercise will not be reviewed but for abuse." *Bd. of Regents of the Univ. & State Colleges of Ariz. v. Cannon*, 86 Ariz. 176, 178 (1959) (affirming the trial court's decision to permit testimony by a lay person in a condemnation case); *see also Maricopa Cnty. v. Barkley*, 168 Ariz. 234, 239 (App. 1990) ("The overarching rule which guides our review of the trial court's decision of the qualifications of the witnesses as experts is that the determination of this matter is left to the discretion of the trial court.").

¶24        The tax court reached the following conclusion regarding Boone's testimony: "He's worked for the government doing this sort of work for many years. From a different perspective obviously. But I believe that this is within his wheelhouse as an expert and I am going to allow it."

¶25        We find no abuse of discretion in the tax court's decision to permit Boone to testify in support of the County's calculation of full cash value. Boone is not an accredited appraiser and he did not perform a

---

[8]        Although Boone testified regarding economic obsolescence, there is no indication in the tax court's lengthy ruling that it gave any weight to Boone's testimony. Rather, the court relied upon its finding that: "Plaintiff's expert's opinion of alleged external obsolescence is not persuasive."

[9]        At trial, counsel for Phoenix Cement renewed its objection to Boone's testimony.

market value appraisal of Phoenix Cement's property. He does, however, have eighteen years of experience working with the North Carolina Department of Revenue, during which time he oversaw the "valuation and taxation of property by taxing units throughout the state." Accordingly, we affirm the tax court's decision to permit Boone to testify.

### III. Escaped Property

**¶26** After Phoenix Cement's administrative appeal was concluded and the tax court appeal was pending, the County conducted an audit of Phoenix Cement's personal property and discovered alleged "escaped property" that Phoenix Cement did not report.[10] Prior to trial, Phoenix Cement filed a motion in limine asking the court to prohibit the County from introducing evidence of this escaped property. The tax court denied Phoenix Cement's motion. Over Phoenix Cement's objection, the County's expert testified regarding the value of the escaped property at trial.[11]

**¶27** On appeal, Phoenix Cement argues that the County failed to follow the proper statutory procedure for assessing escaped property. We review issues of statutory interpretation de novo. *Walgreen Ariz. Drug Co. v. Ariz. Dep't of Revenue*, 209 Ariz. 71, 72, ¶ 6 (App. 2004).

**¶28** The county has the authority to audit a taxpayer's personal property report. *See* A.R.S. § 42-15053(F)(2). "On completing an audit or on discovering property that has not been reported, any property that was found to have escaped taxation is liable for the amount of taxes due determined under chapter 16, article 6 of this title." *Id.* This statute directs the County to determine the value of escaped property by following the procedure set forth in the error correction statutes found in Article 6, which prescribe a statutory method for correcting property tax errors, defined to include "misreporting or failing to report property". A.R.S. § 42-

---

[10] Boone asserted there were eight items of escaped property for tax year 2010 and seven items for tax year 2011.

[11] A significant unreported asset was the blending and sweetening silo, which Appellant added at a cost of approximately $33 million. Phoenix Cement's installation of this silo was substantially complete as of December 2009, but Phoenix Cement did not report it on its 2010 personal property return. Phoenix Cement brought this omission to the County's attention in a supplemental disclosure statement two months prior to trial.

16251(3)(d). Pursuant to the error correction statutes, if the Assessor detects an error in the reporting of property, she must send the taxpayer a notice of proposed correction. A.R.S. § 42-16252(A). Following receipt of the notice, a taxpayer has the opportunity to resolve the alleged error through an administrative process. A.R.S. § 42-16252(C)-(F). Thereafter, either party may appeal to the board of equalization and to court. A.R.S. § 42-16252(G), (H).

¶29        "Arizona and other states have historically recognized the importance of requiring strict adherence to taxation statutes." *See Braden v. Yuma Cnty. Bd. of Supervisors*, 161 Ariz. 199, 202 (App. 1989); *see also Pima Cnty. v. Cyprus-Pima Mining Co.*, 119 Ariz. 111, 113 (1978) (holding that the County's right to appeal a tax valuation "is statutory and the method provided by the Legislature is exclusive."). The County had the statutory right to audit Phoenix Cement's personal property report pursuant to § 42-15053(F)(2). Upon discovery of the alleged escaped property, however, the County should have followed the proper statutory procedure and sent a notice of proposed correction to Phoenix Cement, thereby providing the taxpayer with the opportunity to resolve the error administratively. It did not. Instead, the County by-passed the statutory procedure and added the issue concerning escaped property into Phoenix Cement's pending tax court appeal.

¶30        The tax court permitted the County to offer testimony regarding the "escaped property and concluded that "[p]roperty not reported by a taxpayer on the Business Property Form 82520 is subject [to] this tax appeal under A.R.S. § 42-16255(B)." For the tax years at issue in this case, § 42-16255 provided:

> . . . If an administrative or judicial appeal is pending regarding the subject property, the alleged error shall be adjudicated as part of the administrative or judicial appeal for the affected tax year.

A.R.S. § 42-16255(B) (2009). In 2014, the legislature enacted technical and conforming amendments to the error correction statues, and § 42-16255(B) as amended now provides:

> If an administrative or judicial appeal is pending regarding the subject property, any alleged error **that was already the subject of a notice of proposed correction under section 42-16252 or a notice of claim under section 42-16254** shall be adjudicated as part of the administrative or judicial appeal for

the affected tax year without requiring the parties to exhaust their administrative appeal remedies under this article.

A.R.S. § 42-16255(B) (amended by S.B. 1352 (2d Reg. Sess. 2014)) (emphasis added).

¶31            It is clear from the amended statute that the County must initiate the error correction procedure before it can adjudicate an alleged error as part of a pending judicial appeal. "An amendment which, in effect, construes and clarifies a prior statute will be accepted as the legislative declaration of the original act." *City of Mesa v. Killingsworth*, 96 Ariz. 290, 297 (1964); *see also* Ariz. State Senate, Fact Sheet for S.B. 1352 (2d Reg. Sess. 2014) (explaining that the purpose of the 2014 amendments were to make "various technical and conforming changes"). Although the amended version of § 42-16255(B) does not apply to the case at hand, which involves tax years 2010 and 2011, the amendment clarifies the legislature's original intent and persuades us that in order to adjudicate an alleged error as part of a pending judicial appeal, the county must first initiate the error correction procedure. *See Police Pension Bd. v. Warren*, 97 Ariz. 180, 187 (1965) (holding that although "subsequent legislation clarifying a statute is not necessarily controlling on a court, it is strongly indicative of the legislature's original intent").

¶32            Accordingly, we vacate that portion of the tax court's judgment determining that the County was entitled to include the escaped property in the full cash value of Phoenix Cement's property, with one exception. Phoenix Cement admitted prior to trial that the valuation for tax year 2010 should include the cost of "blending and sweetening" equipment that came on-line in 2009, and Neilson prepared revised reports reflecting this additional cost for 2010, as well as the impact of the addition on the 2011 valuation. At trial, Phoenix Cement's counsel informed the court that the parties had stipulated to the inclusion of the blending and sweetening equipment for tax year 2010.

¶33            "If issues are tried without objection, it amounts to implied consent and . . . the case will be treated as though the amendments were made." *Gilliland v. Rodriquez*, 77 Ariz. 163, 167 (1954); *Starkovich v. Noye*, 111 Ariz. 347, 349 (1974) ("It is also the rule that the admission of evidence without objection will enlarge the pleadings and render it proper for the trial court to treat the pleadings as though amended so as to conform to the proof."). The inclusion of the blending and sweetening equipment for tax year 2010 was tried without objection. Accordingly, the taxable values of Phoenix Cement's property for tax years 2010 and 2011 shall be the values

determined by the County Board of Equalization adjusted for the addition of the blending and sweetening equipment for tax year 2010. We remand to the tax court for purposes of determining the appropriate 2010 and 2011 valuations.[12] As to the remainder of the alleged "escaped property", the County must follow the proper statutory procedure.[13]

## IV. Penalties and Interest

**¶34** After determining the County was entitled to an increase in the plant's full cash values for tax years 2010 and 2011 based on the addition of the escaped property, the tax court applied a ten percent penalty to the value of the escaped property pursuant to A.R.S. § 42-15055(C).[14] That statutory penalty only applies, however, if a taxpayer fails to deliver a personal property report as required by § 42-15052. A.R.S. § 42-15055(C). Here, Phoenix Cement submitted a personal property report for both tax years pursuant to A.R.S. § 42-15052. As a result, a penalty under § 42-15055(C) is not warranted by the facts of this case. *See Bonn & Jensen Chartered v. Ariz. Dept. of Revenue*, 177 Ariz. 170, 174 (Ariz. Tax Ct. 1993)

---

[12] The addition of the blending and sweetening equipment to the taxable value for tax year 2010 may have the effect of lowering the property's value for tax year 2011 as the blending and sweetening assets, already included in the Assessor's valuation for that year, would be valued as if one year older.

[13] The County's list of "escaped property" included "[c]apitalized interest booked for equipment expansion from 2002-2007." Because we determine that the County could not include the alleged escaped property in the taxable value without following the proper statutory procedure, we need not determine whether capitalized interest is a taxable cost for property tax purposes. *See Progressive Specialty Ins. Co. v. Farmers Ins. Co. of Ariz.*, 143 Ariz. 547, 548 (App. 1985) (explaining that appellate courts should not decide issues unless they are "required to do so in order to dispose of the appeal").

[14] The penalties for tax years 2010 and 2011 were $3,536,566 and $3,042,395, respectively.

(explaining that the penalty only applies "when the taxpayer fails to prepare and deliver a list of property").[15]

¶35    The tax court also assessed sixteen percent interest on the taxes arising from the escaped property pursuant to A.R.S. § 42-18053. This statute provides that "all taxes bear interest from the time of delinquency at the rate of sixteen per cent per year simple until paid." A.R.S. § 42-18053(A). Interpreting the predecessor to this statute (A.R.S. § 42-342), our supreme court held that "only after taxes listed on the tax rolls have become delinquent can the taxpayer be charged 16% interest on delinquent amounts." *Ariz. Dep't of Revenue v. Trico Elec. Co-op., Inc.*, 151 Ariz. 544, 550 (1986). Here, the taxes arising from the escaped property were not listed on the tax rolls prior to entry of the tax court's judgment in this case. Accordingly, those taxes were not delinquent, and the tax court's imposition of 16% interest was error. *See Waddell ex rel. Ariz. Dep't of Revenue v. Mayo Found. for Med. Educ. & Research*, 176 Ariz. 178, 180 (Ariz. Tax Ct. 1993) (holding that "there are no 'delinquent' taxes until the rolls are corrected to reflect this Court's judgment *and* the Taxpayers fail to timely pay those taxes"). We therefore vacate that portion of the tax court's judgment assessing penalties and interest against Phoenix Cement.

**CONCLUSION**

¶36    For the foregoing reasons, we affirm the portion of the tax court's judgment finding that Phoenix Cement is not entitled to a reduction in the full cash value of its property for tax years 2010 and 2011 based on economic obsolescence. We vacate the portion of the judgment finding the County is entitled to an increase in the full cash value of the property to account for the alleged escaped property with the exception of the blending and sweetening equipment. On remand, the tax court should determine the 2010 and 2011 taxable values of Phoenix Cement's property by adjusting the values determined by the County Board of Equalization to account for the addition of the blending and sweetening equipment in tax year 2010.

---

[15]    On remand, once the error correction procedures have been completed, the tax court may consider whether to assess a penalty against the taxable value of the blending and sweetening equipment pursuant to A.R.S. § 42-15053. That statute authorizes a ten percent penalty against property that has escaped taxation. A.R.S. § 42-15053(F)(2) ("On completing an audit or on discovering property that has not been reported, any property that was found to have escaped taxation is liable for the amount of taxes due . . . plus a penalty equal to ten per cent of that amount.").

Finally, we also vacate that portion of the judgment assessing penalties and interest.



Ruth A. Willingham · Clerk of the Court
FILED: ama