Frank **RAWSON**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A04–0608–CR–471.

Court of Appeals of Indiana.

May 10, 2007.

Hilary Bowe Ricks, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Frank Rawson ("Rawson") was convicted by a jury in the Marion Superior Court of Class B felony attempted aggravated battery, Class C felony intimidation, Class D felony criminal recklessness, and Class A misdemeanor carrying a handgun without a license. The trial court sentenced him to an aggregate sentence of twenty-two years. Rawson appeals, raising the following issues:

I. Whether there was sufficient evidence to support Rawson's conviction for criminal recklessness;

II. Whether Rawson's convictions for intimidation, attempted aggravated battery, and criminal recklessness violate the Indiana Constitution's double jeopardy clause; and,

III. Whether Rawson's aggregate sentence of twenty-two years is inappropriate.

We affirm.

### Facts and Procedural History

Rawson has lived next door to Gregory Breese ("Breese") in Marion County since 1997. On Saturday, July 30, 2005, Breese was using a riding lawn mower in his yard. As Breese approached a tree with the mower, Rawson stepped out from behind the tree and stood in front of the lawnmower. Breese could see that Rawson was angry, as his face was flushed and he was mouthing something. Breese could not hear Rawson over the mower, so he turned it off, got off of the mower, and removed his earplugs. Rawson was ranting nonsensical gibberish with a stream of profanity. He called Breese a college punk and said that he was going to kill him. Tr. p. 129.

Breese asked Rawson what he wanted, but Rawson continued his verbal tirade. Rawson then walked toward Breese with his fists balled. When Breese thought Rawson was dangerously close to him, he put his hands up and pushed against Rawson's shoulders to keep him away. Rawson then staggered backwards several steps and fell down. Rawson stood up and began approaching Breese while continuing his barrage of threats. Breese pushed Rawson down again and then told Rawson that he was drunk and needed to leave the Breeses' yard.

Rawson stood up a second time and pulled out a revolver from his pocket. He told Breese, "I'm going to kill you." *Id.* at 136. Upon seeing the gun, Breese turned and started to run away from Rawson. He immediately heard a shot, and he felt something graze across his hip. A bullet

from Rawson's gun had gone through the back of Breese's shirt and had exited through the front of the shirt. Breese kept running, and he heard another shot. Breese then began running back towards his house. He heard a third shot. Breese ran down his driveway to the other end of the house where the garage door was open.

Once Breese was inside his house, he called 9-1-1 from his kitchen phone. After he hung up with the emergency operator, his phone immediately rang. Rawson was on the other line, and he continued making threats, saying, "You little punk ... I'm going to kill you." *Id.* at 147. Breese just listened to him for a moment before hanging up. The phone immediately rang again, and Breese answered it. Rawson was on the other line again, and he continued making threats. Breese hung up again, and Rawson called back a third time to continue making threats. Breese told Rawson that he was going to go to jail and then hung up the phone.

Breese and Rawson's neighbor, Nathan Enas ("Enas") was outside with his daughter when the altercation took place. Enas immediately recognized Rawson's voice but did not recognize Breese's voice. Enas heard Rawson yell, "I'm going to kill you." *Id.* at 205–206. Enas later told the police that he heard five or six gun shots before he ran back to collect his daughter to take her inside. Another neighbor, William Doherty, said that he heard three to five shots while he was sitting at home. *Id.* at 222.

The police were dispatched to Rawson's house. When two deputies approached Rawson's home, they heard a "very violent disturbance" inside. *Id.* at 246. They knocked on the front door and identified themselves as law enforcement officers. Rawson responded, by yelling, "Who the f* * * are you?" and "What the f* * * do you want?" *Id.* at 247. Rawson opened the door to the officers, and Deputy Steven Rivers ("Deputy Rivers") noticed a silver revolver lying on a cabinet next to the door.

When Rawson attempted to slam the door shut, the deputies forced the door back open and grabbed Rawson to prevent him from accessing his revolver. Rawson resisted the deputies, and the three men fell off the porch and rolled onto the front lawn. Rawson was screaming profanities at the officers, while trying to kick and swing at them. The deputies were able to eventually handcuff Rawson, but they had to continue to restrain him as he remained physically combative. When medics came to the scene to treat Rawson for chest pains, he swore and spit at them. The medics later returned when Rawson continued to complain of chest pains. While Rawson was being treated, Detective Alan Driver ("Detective Driver") advised Rawson of his Miranda rights before asking him some questions. Rawson then blurted out, "I tried to kill that son of a b* * * * with a gun. You should have seen him run." *Id.* at 300–301.

The deputies entered Rawson's home to retrieve the revolver Rawson claimed he had used to fire at Breese. The officers discovered that Rawson had fully loaded the gun following the altercation. Later, the police also found four spent shells in a box under Rawson's bed. They also collected several other firearms and ammunition from Rawson's home. Upon speaking with Breese about the incident, the officers collected Breese's shirt with the bullet hole for testing.

On August 4, 2005, the State charged Rawson with Class A felony attempted murder, Class C felony intimidation, Class D felony criminal recklessness, Class D felony pointing a firearm, and Class A misdemeanor carrying a handgun without a license. A two-day jury trial com-

menced on May 8, 2006. The jury found Rawson guilty of intimidation, criminal recklessness, pointing a firearm, carrying a handgun without a license and attempted aggravated battery, a lesser offense of attempted murder. The trial court merged the pointing a firearm conviction with the conviction for attempted aggravated battery.

On June 1, 2006, the trial court sentenced Rawson to fifteen years for the attempted aggravated battery conviction, four years for the intimidation conviction, three years for the criminal recklessness conviction, and one year for carrying a handgun without a license. The trial court ordered the first three sentences to run consecutively, for a total of twenty-two years. Rawson now appeals. Additional facts will be added as necessary.

### I. Sufficiency of the Evidence

 Rawson first contends that there was not sufficient evidence to support his conviction for criminal recklessness. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Love v. State,* 761 N.E.2d 806, 810 (Ind. 2002). We must respect the jury's exclusive province to weigh conflicting evidence. *McHenry v. State,* 820 N.E.2d 124, 126 (Ind.2005). On review, we look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

Rawson claims that there were no shots fired in the direction of Breese's home at 2700 Will Crest Drive, an occupied residence. Therefore, he contends that there was not sufficient evidence to convict him of recklessly performing an act that created a substantial risk of bodily harm to the occupants of the home by firing a handgun in the direction of the residence.

 Upon reviewing the transcript, it appears that Rawson was firing upon Breese while Breese was running towards his house, and in particular towards his driveway and around to his attached garage. Tr. pp. 142–144. Rawson even testified that the incident occurred near or in the direction of Breese's front porch. *Id.* at 379. Because most of the testimony about the direction Breese ran while being fired upon was presented at trial with photographs and the aid of a laser pointer, it is difficult for us to know with certainty the exact path Breese took to get to his garage. However, a reasonable inference from the evidence supporting a verdict is enough for us to find the evidence to be sufficient. *Herron v. State,* 808 N.E.2d 172, 176 (Ind.Ct.App.2004), *trans. denied.* Rawson's claim amounts to an invitation to reweigh the evidence, which we will not do. Thus, we conclude that the State's evidence was sufficient to support Rawson's conviction for criminal recklessness.

### II. Double Jeopardy

Next Rawson contends that his convictions for attempted aggravated battery, intimidation, and criminal recklessness violate Indiana's double jeopardy clause. He maintains that these convictions were based upon the same conduct of drawing his handgun and firing it. Br. of Appellant at 11.

In Indiana:

[t]wo or more offenses are the same offense in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. However, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is

not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

*Miller v. State,* 790 N.E.2d 437, 439 (Ind. 2003) (quotations omitted; citing *Richardson v. State,* 717 N.E.2d 32 (Ind.1999)).

Rawson admits that the statutory elements test was not violated, but he claims that the actual evidence presented does not establish separate and distinct facts to support the convictions. Br. of Appellant at 12. We cannot agree. In *Miller,* the defendant's use of the same weapon in the commission of separate and distinct offenses did not violate double jeopardy because each of the defendant's convictions was supported by proof of at least one unique evidentiary fact not required for any other conviction. 790 N.E.2d at 439.

In *Stafford v. State,* 736 N.E.2d 326, 332 n. 5 (Ind.Ct.App.2000), *trans. denied,* we rejected a defendant's claim that his convictions for intimidation and battery violated his double jeopardy protections. We noted:

> [T]he double jeopardy protections are not implicated by the intimidation conviction because the evidence that supported the charge and conviction of intimidation, *i.e.,* threatening Batdorf while drawing a deadly weapon, was not the same evidence [that] supported the charges and convictions of confinement and battery, *i.e.,* placing the rope around her neck. As we noted in *Hart v. State,* 671 N.E.2d 420, 428 (Ind.Ct.App.1996), double jeopardy is not violated by the elevation of multiple felony charges on the basis that the defendant was armed with a deadly weapon while committing separate and distinct crimes.

■ Here, the intimidation charge involved the factual scenario of Rawson brandishing a gun while threatening to kill Breese. Rawson's conviction for attempt-ed aggravated battery, however, involved the separate and distinct act of Rawson firing at Breese and in fact shooting a hole through Breese's shirt. Therefore, we do not find any double jeopardy violation regarding Rawson's convictions for intimidation and attempted aggravated battery.

■ Regarding Rawson's convictions for criminal recklessness and attempted aggravated battery, we note that these convictions involve separate victims. The facts supporting the aggravated battery conviction demonstrate that Rawson repeatedly shot at Breese while Breese was fleeing from Rawson. However, Rawson's conviction for criminal recklessness is supported by evidence that Rawson shot in the direction of the Breeses' home, endangering the occupants of the residence.

The Indiana Supreme Court has repeatedly held that where convictions arise from a situation where separate victims are involved, no double jeopardy violation exists. For example, in *Bald v. State,* 766 N.E.2d 1170, 1172 (Ind.2002), the court affirmed the defendant's convictions for three murders and arson, concluding that

> [t]he evidentiary facts used to establish felony murder established some, but not all, of the elements of the arson offense. To find Bald guilty of class A felony arson, the jury was required to find Brewer was injured as a result of arson. In finding Bald guilty of each felony murder, the jury was required to find evidence of a separate victim's death. Thus, each conviction required proof of at least one unique evidentiary fact. Accordingly, Bald's convictions do not violate the *Richardson/Spivey* [*v. State,* 761 N.E.2d 831 (Ind.2002)] actual evidence test.

766 N.E.2d at 1172. *See also Whaley v. State,* 843 N.E.2d 1, 15 (Ind.Ct.App.2006), *trans. denied* (holding that two convictions for resisting law enforcement did not vio-

late double jeopardy even though defendant's actions involved a single incident of resisting because defendant injured two people as a result of his resistance). Therefore, because Rawson's conduct involved multiple victims, we conclude that his convictions for criminal recklessness and attempted aggravated battery do not violate double jeopardy.

### III. Sentencing

Rawson lastly contends that his aggregate sentence of twenty-two years is inappropriate. The trial court sentenced Rawson to fifteen years for Class B felony attempted aggravated battery, four years for Class C felony intimidation to run consecutive to the first count, three years for Class D felony criminal recklessness to run consecutive to the first and second counts, and one year for carrying a handgun without a license to run concurrently with the other convictions. In essence, the trial court enhanced the B felony conviction by five years, enhanced the D felony conviction by one and a half years and sentenced Rawson to the advisory sentence for the C felony.

### A. *Mitigating and Aggravating Circumstances*

 Generally, "sentencing determinations are within the trial court's discretion." *Cotto v. State*, 829 N.E.2d 520, 523 (Ind.2005). When our court is faced with a challenge to an enhanced sentence, we must "determine whether the trial court issued a sentencing statement that (1) identified all significant mitigating and aggravating circumstances; (2) stated the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulated the court's evaluation and balancing of the circumstances." *Payne v. State*, 838 N.E.2d 503, 506 (Ind. Ct.App.2005), *trans. denied*. We frequently hold that a single aggravating circumstance may be sufficient to support the

imposition of an enhanced sentence. *See Deane v. State*, 759 N.E.2d 201, 205 (Ind. 2001). We will not modify the trial court's sentence unless it is clear that the trial court's decision was clearly "against the logic and effect of the facts and circumstances before the court." *Rose v. State*, 810 N.E.2d 361, 365 (Ind.Ct.App.2004).

 Rawson first contends that the trial court did not afford enough mitigating weight to his expression of remorse, his alleged mental problem, and his lack of criminal history. He also argues that the trial court afforded too much aggravating weight to his escalating violent behavior. The finding of mitigating circumstances lies within the trial court's discretion. *Spears v. State*, 735 N.E.2d 1161, 1167 (Ind.2000) (citation omitted). The failure to find a mitigating circumstance clearly supported by the record may imply that the trial court overlooked the circumstance. *Sipple v. State*, 788 N.E.2d 473, 480 (Ind.Ct.App. 2003), *trans. denied*. The trial court, however, is not obligated to consider "alleged mitigating factors that are highly disputable in nature, weight, or significance." *Id.* (citation omitted). The trial court need enumerate only those mitigating circumstances it finds to be significant. *Battles v. State*, 688 N.E.2d 1230, 1236 (Ind.1997) (citation omitted). On appeal, a defendant must show that the proffered mitigating circumstance is both significant and clearly supported by the record. *Spears*, 735 N.E.2d at 1167 (citing *Carter v. State*, 711 N.E.2d 835, 838 (Ind.1999)).

 Regarding Rawson's remorse, there is clearly conflicting evidence in the record. While Rawson did read a statement of remorse at his sentencing hearing, the trial court noted, "this is the first time I've ever heard Mr. Rawson apologize to Mr. Breese and his wife, but as the state-

ment went on it was clear to the Court the remorse is more for the impact on his life than it is on, on the Breeses' life." Sent. tr. p. 217. Commenting on Rawson's demeanor during the trial, the court also noted, "[a]nd I simply cannot, based on Mr. Rawson's demeanor—and while I do agree to some extent he behaved, it was almost with a laugh that he described that Mr. Breese ran like a deer while he testified at trial. And there was nothing funny about what happened that day." *Id.* at 224. While testifying and being questioned on why he shot at Breese, Rawson stated, "I'd do it again." Tr. p. 360. We therefore agree with the trial court that any statements of remorse made after he had been convicted were disingenuous and properly afforded minimal mitigating weight.

 Rawson next cites to *Mayberry v. State,* 670 N.E.2d 1262, 1271 (Ind. 1996), to claim that a trial court is *required* to give significant mitigating weight to a diagnosis of mental illness. That is incorrect. "[D]epending upon the sentencing goals, mental illness can be considered a mitigating factor or an aggravating factor." *Scott v. State,* 840 N.E.2d 376, 383 (Ind.Ct.App.2006), *trans. denied.* Furthermore, we note that Rawson was not conclusively diagnosed with any mental illness. Rawson's defense counsel claimed at the sentencing hearing that court appointed psychiatrists had diagnosed Rawson with paranoid schizophrenia. Sent. tr. pp. 208–209. However, the prosecutor disputed this claim, and the trial court noted that neither expert had diagnosed Rawson with paranoid schizophrenia. *Id.* at 214. We find no mention of paranoid schizophrenia in the presentence investigation report.

In his reply brief, Rawson points out that he may have bipolar disorder. At sentencing the trial court noted that one of the doctors "did find the possibility of de-

pression with bipolar disorder and alcohol dependence," and the court awarded moderate mitigating weight to this factor. *Id.* at 218. The court further noted that Rawson had told the doctors that he "was just angry when this happened." *Id.* In explaining why it chose not to credit Rawson's health with significant mitigating weight, the trial court stated, "I do agree with the State, however, that Mr. Rawson does sometimes manipulate his health in order to garner leniency and sympathy." *Id.* This conclusion is essentially a determination of the defendant's credibility, and therefore we must afford the trial court discretion as it is in the best position to judge the sincerity of Rawson's mental health claim. Upon review of the record, it appears that Rawson was capable of controlling his behavior, did not have significant limitations on his functioning, and failed to identify a nexus between his alleged mental illness and the instant offense. *See Scott,* 840 N.E.2d at 384. Therefore, the trial court did not abuse its discretion by not affording more mitigating weight to Rawson's health.

 Rawson further claims that the trial court abused its discretion in not assigning any mitigating weight to his lack of criminal history. At the sentencing hearing, the trial court stated:

> I want to address the argument of defense counsel concerning his law-abiding life. Other than his self-reports, really not much is, is known, and, and to, to some extent, then, that's good for him, because there's absolutely no criminal involvement up until the end of the 90s and early 2000s. But unfortunately for Mr. Rawson it is his recent behavior that's landed him where he is today. . . . I have to find, based upon the evidence presented today as well as at the early testimony at the bond hearing, and the statute I would note mentions not histo-

ry of convictions, but the defendant has a history of criminal behavior, and I think the State well articulated those crimes which he's committed in recent years that have so adversely impacted his neighborhood. They do involve intimidation, they do involve battery, they do involve the shooting of a firearm in a residential neighborhood. And that is the behavior that we're dealing with right now. And I agree with the State and Miss Foy that there is an escalation in the level of violence. There is a testing, if you will, on how much the system will bear. It is somewhat perplexing to me that on these previous phone calls law enforcement hasn't done more to take him in, because I'm not sure his cases were even screened by the Prosecutor's Office. I'm not sure it even got that far. I—apparently one time there was an involuntary commitment, but it did not result in successful treatment, and that is because Mr. Rawson is a person of a very petulant nature. He is very strong willed.... He is a person full of rage, a person full of anger, and a person who pushes the limits of civilized neighbors in order to see what he can get away with, and does so in manners that are life threatening to them. So I think his character and where he is today and the criminal, escalation of criminal behavior, that is, that is aggravating.

Sent. tr. pp. 218–220.

■■ Although a lack of criminal history may be considered a mitigating circumstance, "[t]rial courts are not required to give significant weight to a defendant's lack of criminal history," especially "when a defendant's record, while felony-free, is blemished." *Stout v. State,* 834 N.E.2d 707, 712 (Ind.Ct.App.2005), *trans. denied.* The trial court's thoughtful analysis of Rawson's increasingly violent, and in fact criminal, behavior towards his neighbors demonstrates that the trial court did not overlook the fact that Rawson has no prior convictions as a mitigating factor. *See Magers v. State,* 621 N.E.2d 323, 324 (Ind. 1993) (holding that trial court did not abuse its discretion in not affording mitigating weight to the defendant's lack of criminal history where the defendant had threatened to kill others in the recent past and demonstrated no remorse for his actions).

### B. *Appropriate Sentence*

■■ Lastly, Rawson claims that his aggregate sentence of twenty-two years is inappropriate in light of the nature of the offense and character of the offender. Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B) (2006); *Marshall v. State,* 832 N.E.2d 615, 624 (Ind.Ct.App.2005), *trans. denied.*

Regarding Rawson's character, the presentence investigation report is replete with letters from Rawson's neighbors depicting his violent behavior. Moreover, neighbors appeared before the trial court at Rawson's bond hearing and sentencing hearing to testify about Rawson's drunken and belligerent violence. It is readily apparent to this court that Rawson has terrorized his neighborhood for several years, threatening violence and habitually brandishing guns.

In July 2000, Rawson attacked an elderly neighbor Sue Horn ("Horn"), after she advised him that another neighbor, Tom Jordan ("Jordan"), was considering calling animal control to collect Rawson's roaming dogs. Horn fled to the Breeses' home, and then Rawson came to the Breeses' home with his gun to confront Horn. The Breeses' three children were at home when

Rawson came to their house with his gun and pounded on the front door demanding to know where to find Jordan so that he could kill him. Appellant's Supp.App. p. 15. The following day, Rawson drove his riding lawnmower across the neighbors' lawns to Horn's residence with his gun in hand. He pounded on her front door, screamed profanities at her and told her that he was going to kill her for teasing his dogs. Horn called the police, and the police took Rawson into detention for psychiatric evaluation.

In April 2005, Rawson attacked neighbor William Doherty with llama leashes after the neighbor questioned why Rawson's llama was wandering through Doherty's yard. Id. at 26. Then Rawson returned to his house to procure a gun before returning outside to try and confront Doherty.

Rawson has allowed his vicious dogs to roam the area, and they have attacked several people and a leashed dog. Id. at 23, 25. He threatened to kill an elderly man with Parkinson's disease who asked him to restrain his dogs so that they would not chase him during his morning walks. Id. One neighbor wrote to the probation officer that because of Rawson's vicious threats and attacks on neighbors, the neighbors are always fearfully wondering, "Is he home? Is he outside? Is he armed?" Id. at 21. Rawson is clearly a menace to society and a threat to the safety of the community.

Regarding the nature of the present offenses, it is relevant that Rawson shot at an unarmed neighbor who was running away from him. The bullet barely missed Breese, grazing his hip and putting a hole through his shirt. Rawson committed this act in a residential neighborhood where children were present, and he shot in the direction of Breese's home subjecting the occupants of the residence to danger as well. Furthermore, the trial court concluded that this attack was unprovoked. This incident has caused Breese as well as his eight-year-old son who heard the shots to experience nightmares. Yet, the trial court noted that in recounting this incident, Rawson almost laughed when describing how Breese ran like a deer when Rawson fired upon him. Sent. tr. p. 224. In light of this heinous offense and Rawson's deplorable character, we conclude that an aggregate sentence of twenty-two years is not inappropriate.

### Conclusion

We conclude that there was sufficient evidence to support Rawson's conviction for criminal recklessness, that Rawson's convictions did not put him in double jeopardy, and that Rawson's aggregate sentence of twenty-two years is not inappropriate in light of the nature of the offense and character of the offender.

Affirmed.

NAJAM, J., and MAY, J., concur.