Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

May 02 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT J. HARDY**
Hardy Law Office
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RONNIE JONES,                    )
                                 )
    Appellant,           )
                                 )
    vs.                  )     No. 17A04-1108-CR-444
                                 )
STATE OF INDIANA,                )
                                 )
    Appellees.           )

APPEAL FROM THE DeKALB SUPERIOR COURT
The Honorable Kevin P. Wallace, Judge
Cause No. 17D01-1001-MR-1

**May 2, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Ronnie R. Jones ("Jones") appeals his aggregate 103-year executed sentence for murder, Class A felony attempted murder, and Class C felony criminal recklessness. On appeal, Jones argues that the trial court abused its sentencing discretion by failing to enter a reasonably detailed sentencing statement and overlooking significant mitigating circumstances, and that his sentence is inappropriate under Appellate Rule 7(B). We affirm.

**Facts and Procedural History**

On January 1, 2010, after an argument with his girlfriend, Melissa Patrick ("Melissa"), Jones armed himself with a 9 mm semi-automatic handgun and drove to Melissa's workplace in Auburn, Indiana. Melissa worked at a group home for elderly, disabled individuals, and during her shift, she was the sole caregiver for four residents, two of whom were bedridden. When Jones arrived at the group home, he went inside, where Melissa was busy preparing a meal for the residents. After a brief argument, Jones shot Melissa in the face and chest, killing her.

Jones then drove to the home of his ex-wife, Sarah Grimm ("Sarah"), in Waterloo, Indiana. At the time, Sarah was dating Jason Patrick ("Jason"), who was Melissa's estranged husband. On the date in question, Sarah and Patrick were both present in the home, along with six children: Melissa and Jason's two children, K.P. and A.P.; Melissa's child from a previous relationship, B.G.; Jones and Sarah's two children, P.J. and J.J.; and Jones's child from a previous relationship, E.J. Before arriving at Sarah's home, Jones called Sarah and left a message saying that this would probably be the last

2

time she would hear from him because he would be going away for a long time. Because the phone call violated a protective order, Sarah called the police.

About ten minutes later, Jones arrived at the house and rang the doorbell. When eleven-year-old K.P. looked out the window and saw that Jones was holding a gun, she began shouting and then ran and hid under a bed with her brother. Jones then fired three gunshots into the door before his gun jammed. When Jason heard the gunfire, he retrieved his shotgun and got all the children to move toward the back of the house before he returned to the front door. As Jones turned to walk back toward his vehicle, Jason shot him in the leg. Jones then got into his truck and drove it through the front door of the home. Twelve-year-old P.J. then ran out of the back of the house through the snow, and Jones pursued her. Sarah shouted at Jones to leave P.J. alone, and Jones shouted that he "was coming back to get [Sarah]." Tr. pp. 521-22. Once P.J. crossed the street, Jones slowed down and started to walk toward a neighbor's house.

When Officer Gary Warfield ("Officer Warfield") of the Waterloo Marshal's Department responded to the dispatch to Sarah's home, he saw Jones walking along the side of the road. Jones flagged Officer Warfield down. When Officer Warfield started to handcuff Jones, Jones handed him a magazine for a semi-automatic weapon containing seven bullets. Jones told Officer Warfield that his gun was still inside his truck, which he had driven through the front of Sarah's house, and that the gun had jammed. When Officer Warfield asked Jones why he had come to Sarah's residence, he stated that he had come to kill Sarah and Jason. A short time later, Jones volunteered that he had killed a woman at a specific address in Auburn, but refused to provide the victim's name.

3

Officer Stewart Randall Rufner ("Officer Rufner") of the Auburn Police Department attempted to locate the address Jones had provided, but discovered that it did not exist. Officer Rufner was eventually able to locate the house by looking into a window and observing Melissa's body on the floor next to a couch where two elderly people were watching television. When Officer Rufner entered the house, one of the residents told him that "a man came in here and shot this young girl." Tr. p. 237.

After being read his Miranda rights, Jones gave a recorded statement to Indiana State Police Detective Mark Heffelfinger ("Detective Heffelfinger"). Jones confessed to killing Melissa and stated further that he went to Sarah's house because he wanted to shoot Jason. He also stated that he fired three shots into the front door of Sarah's home before he was shot by Jason. Jones stated further that when he drove his truck through the front door of the residence, he was "wishing [Jason] was standing by it." Ex. Vol., State's Ex. 23, p. 5. When questioned about his intent toward Sarah, Jones stated that he wanted "to kick her in the face" and that he "probably would have shot her if [he] could have got close to her." Ex. Vol., State's Ex. 23, p. 7.

As a result of these events, Jones was charged as follows: Count I, murder; Count II, Class A felony attempted murder of Jason; Count III, Class A felony attempted murder of Sarah; and Count IV, Class C felony criminal recklessness for firing a gun into an inhabited dwelling. A three-day jury trial commenced on July 26, 2011, and at the conclusion of the evidence, Jones was found guilty of Counts I, II, and IV, but acquitted of Count III. A sentencing hearing was held on August 26, 2011, and the trial court ordered that Jones serve sixty years for the murder conviction, thirty-five years for the

attempted murder conviction, and eight years for the criminal recklessness conviction. All sentences were ordered to be served consecutively, resulting in an aggregate sentence of 103 years executed in the Department of Correction. Jones now appeals.

**Discussion and Decision**

In the first part of his challenge to his sentence, Jones argues that the trial court abused its discretion by failing to enter a reasonably detailed sentencing statement and overlooking significant mitigating circumstances, namely, his lack of criminal history and diagnosis with multiple sclerosis. Sentencing decisions rest within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. Id. "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.'" Id. at 491.

A trial court may abuse its sentencing discretion in a number of ways, including: (1) failing to enter a reasonably detailed sentencing statement; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. Id. at 490-491. If the trial court abuses its discretion in one of these or another way, remand for resentencing is the appropriate remedy "if we cannot

5

say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491.

Jones argues that the trial court abused its discretion by failing to enter a reasonably detailed sentencing statement. This claim is without merit. In imposing Jones's 103-year aggregate sentence, the trial court entered the following verbal sentencing statement:

> I've received letters from Wayne and Yvonne Griffith, Melissa Patrick's parents, and from [B.G.] and [A.P] and [K.P.]. Those people who were closest to Ms. Patrick and those people who will miss her the most. Some of the adjectives that they used to describe her, loving, forgiving, very kind, the light of my life, wonderful, great personality and caring. As a matter of fact Ms. Patrick was literally caring for others at the time of her death. Each of those letters wrote about, each of those individuals wrote about the irrevocable loss and the huge void in their lives as the result of her death. Almost all of the people in the home just south of Waterloo wrote of Mr. Jones. Some the adjectives they used to describe him, creepy, paranoid, I was afraid of him, control freak. The youngest member of the household, the Defendant's daughter, won't even refer to him by name. She calls him R-o-n. As has been noted, as a result of Mr. Jones' actions the two oldest children, [B.G.] and [E.J.], are now living in different households and away from their sisters. So the children are not only dealing with the loss of a parent but also the loss of a sibling. Each of the children now have what one person calls, wrote, an awful history. They've either had their mother murdered or they are daughters of a murderer. For those of you that are asking why, I think that, uh, Sarah Jones Patrick probably has come the closest. She writes. To begin with I believe this all happened because Ron no longer had any control over any of us involved and he couldn't stand it. We all said no, leave us alone. And he was not going to have that. So as he said, he was going after everyone. He is the only one to blame for this, and unfortunately, he refuses to take any responsibility. He is a control freak and always has been since I've known him. Ron created this whole situation. He had many opportunities to make different decisions. I believe that the following aggravating circumstances exist and specifically those ones listed in the statute. Aggravating circumstance number three which is that at least in Count IV, at least two of the victims, two of the children were less than twelve years of age at the time of the offense. I believe that aggravating circumstance number four exists, uh, with regards to Count II,

6

Attempted Murder. Attempted murder is a crime of violence, as defined by statute, and in this case it was knowingly committed in the presence of individuals who were less than eighteen years of age and not victims of the offense. That's the six children in the house at the time Mr. Jones tried to kill Mr. Patrick. There's no question that they've been impacted irrevocably. I believe that protective order, I believe that aggravating circumstance number five, that the person violated a protective order in committing the crime. Clearly that pertains to Counts II and IV, unquestionably. And I believe Mr. McAlhany is correct that, uh, regardless of how Ms. Patrick may have viewed or not viewed the protective order, in fact the protective order was in place. And that protective order limited Mr. Jones and his actions. It did not control or limit Ms. Patrick and her actions. There are two other aggravating circumstances not specifically listed as aggravators but other considerations which the Court is allowed to, uh, take into account at sentencing. Those are with regards to Count IV, there were multiple victims, six victims. And with regards to Count I, I believe it is appropriate to consider, and I believe it is an aggravating circumstance, that the murder of Ms. Patrick occurred at her place of employment at a time when she was solely responsible for the care of four elderly people who to some extent witnessed the murder and were left to fend for themselves. There has been a claim that the Court should consider mitigating circumstances, the fact the Defendant has no history of delinquent, of delinquent and criminal activity. That's true. Apparently, that's factually correct. However in this case I'm not sure that, that carries much weight when the crime we're talking about is murder, attempted murder and criminal recklessness under the circumstances of this case. And I think the Defense has also argued that the crime was the result of circumstances not likely to recur, citing his health and family situation. I'm not sure whether that is or is not the case. However, under the circumstances here, quite frankly, I don't give that much weight. There's been much said about whether or not the Court should consider remorse. Uh, as I'm sure the attorneys know, remorse is not specifically listed as an aggravating or mitigating circumstance. The lack of remorse or the expression of remorse. And in this case I listened to Mr. Jones for ten minutes this morning. And I didn't hear remorse or even much sympathy over the way things have worked out. For the offense of murder I believe that the aggravating circumstances outweigh any mitigating circumstances. I'm going to order that Mr. Jones be committed to the Indiana Department of Corrections for sixty years. For the attempt of, for the offense of attempted murder I believe that the aggravating circumstances outweigh any mitigating circumstances. And I'm going to sentence the Defendant to thirty-five years. And in Count IV, criminal recklessness I believe that the aggravating circumstances justify a sentence of eight years and outweigh

7

any mitigating circumstances that may be considered. As has been pointed out, each of these offenses were separate offenses, separate victims and I believe the aggravating circumstances outweigh the mitigating circumstances and justify consecutive sentences on each Count. So, the total is sixty plus thirty-five plus eight, that is a hundred and three years. I'm going to order that each sentence be served in its entirety.

Tr. pp. 812-816.

The foregoing sentencing statement spanned five pages of transcript and contained a clear, thoughtful, and detailed statement of the aggravating and mitigating circumstances relied on by the trial court. First, the court found that several of the statutory aggravating circumstances set forth in Indiana Code section 35-38-1-7.1 were present. Specifically, the trial court found that, with respect to Jones's criminal recklessness conviction, at least two of the victims were less than twelve years of age. See I.C. § 35-38-1-7.1(a)(3). With respect to Jones's attempted murder conviction, the trial court found that Jones knowingly committed a crime of violence in the presence of an individual less than eighteen years of age and who was not a victim of the offense. See I.C. § 35-38-1-7.1(a)(4). Specifically, the court found that Jones attempted to murder Jason in the presence of all six children. Finally, the trial court found that in committing the offenses, Jones violated protective orders prohibiting him from having contact with Melissa, Sarah, and Jason. See I.C. § 35-38-1-7.1(a)(5). The court found two additional non-statutory aggravating circumstances, (1) the fact that there were multiple victims, and (2) the fact that Jones murdered Melissa at her workplace in the presence of elderly, disabled group home residents, which left the dependent residents to fend for themselves. The trial court also found that Jones's lack of criminal history and his "family and health

8

situation" to be mitigating factors, but declined to give them much weight. Tr. p. 815. In light of the clarity and specificity of the sentencing statement, Jones's claim that the trial court failed to enter a reasonably detailed sentencing statement is utterly without merit.

Jones also argues that the trial court abused its discretion by overlooking two significant mitigating circumstances, namely, his lack of criminal history and his multiple sclerosis. An allegation that the trial court failed to identify a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. Anglemyer, 868 N.E.2d at 493. If the trial court does not find the existence of a mitigating factor that has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. Id.

With respect to Jones's lack of criminal history, we note that the trial court specifically found that Jones had no history of criminal or delinquent behavior, but declined to give that factor significant mitigating weight in light of the seriousness of Jones's crimes. Accordingly, the trial court did not ignore Jones's lack of criminal history; rather, the court specifically recognized it as mitigating, but did not attribute significant mitigating weight to that factor. To the extent that Jones argues that the trial court abused its discretion by attributing insufficient weight to this factor, we note that this court will not review the relative weight or value assigned to aggravating and mitigating circumstances. Id. at 491; see also Stout v. State, 834 N.E.2d 707, 712 (Ind. Ct. App. 2005) ("Trial courts are not required to give significant weight to a defendant's lack of criminal history."), trans. denied.

9

With respect to Jones's claim that the trial court overlooked his multiple sclerosis as a mitigating factor, we note that the trial court specifically took note of Jones's "health situation," but did not attribute significant weight to it. Tr. p. 815. Accordingly, the trial court did not overlook Jones's health problems as a mitigating factor, and, again, we will not review the relative weight or value assigned to aggravating and mitigating circumstances. Anglemyer, 868 N.E.2d at 491. Moreover, Jones has not argued that the disease affected him cognitively or in any way impaired his mental functioning. His only argument is that the disease will shorten his lifespan. Although Jones's defense counsel briefly mentioned that the trial court "could reasonably infer that [Jones's] disease will affect his life expectancy," counsel provided absolutely no evidence to back up this assertion. Tr. p. 801. Accordingly, his conclusory allegation in this regard was not clearly supported by the record.[1] For all of these reasons, we conclude that the trial court did not abuse its discretion in sentencing Jones.

Jones also argues that his 103-year aggregate sentence is inappropriate in light of the nature of the offense and the character of the offender. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence imposed by the trial court. Alvies v. State, 905 N.E.2d 57, 64 (Ind. Ct. App.

---

[1] On appeal, Jones directs our attention to medical evidence suggesting that individuals with multiple sclerosis have a life expectancy that is five to ten years shorter than that of unaffected individuals. Appellant's Br. at 3. But we will review the trial court's sentencing decision in light of the evidence Jones presented to the trial court. Because Jones did not present any evidence concerning his alleged shortened lifespan to the trial court, we cannot conclude that his assertion in that regard was clearly supported by the record. Moreover, the possibility that Jones may have a shortened lifespan as a result of his multiple sclerosis is merely speculative, and the trial court was not obliged to consider mitigating factors that are highly disputable in nature, weight, or significance. See Rawson v. State, 865 N.E.2d 1049, 1056 (Ind. Ct. App. 2007), trans. denied.

2009) (citing Anglemyer, 868 N.E.2d at 491). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Anglemyer, 868 N.E.2d at 491. However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The burden is on the defendant to persuade us that his sentence is inappropriate. Reid v. State, 876 N.E.2d 1114, 1116 (Ind. 2007).

As an initial matter, we note that Jones states that his sentence is inappropriate under Appellate Rule 7(B), but he has completely failed to develop any argument under that rule. Accordingly, his claim under Appellate Rule 7(B) is waived. Smith v. State, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) (holding that a party waives any issue raised on appeal where the party fails to develop a cogent argument), trans. denied. Waiver notwithstanding, Jones's sentence is not inappropriate. Jones was convicted of murder, for which the sentencing range is forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3. Jones was also convicted of Class A felony attempted murder, for which the sentencing range is twenty to fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. Finally, Jones was convicted of Class C felony criminal recklessness, for which the sentencing range is two to eight

11

years, with an advisory sentence of eight years. Ind. Code § 35-50-2-6. Jones received a sixty-year sentence for his murder conviction, a thirty-five year sentence for his attempted murder conviction, and an eight-year sentence for his criminal recklessness conviction. All sentences were ordered to be served consecutively, resulting in aggregate sentence of 103 years executed.

In this case, the nature of the crimes alone easily supports the trial court's imposition of a 103-year executed sentence. Jones's crimes were extraordinarily violent and among the most disturbing this court has encountered. After arguing with Melissa, Jones armed himself with a semi-automatic weapon and two magazines before driving to Melissa's workplace. Jones described his intention toward Melissa by saying that at first he wanted to "scare her half to death," but as his frustration mounted during the drive, he decided "fine, everybody is pissed at me, I'm going after everybody." Ex. Vol., State's Ex. 23, pp. 2-3. When Jones entered the residence, he confronted Melissa, and when Melissa said something that "irked" him, Jones shot her in the chest and face, killing her. Ex. Vol., State's Ex. 23, p. 3. At least one of the group home residents witnessed the murder, and Jones's actions left four vulnerable, disabled, elderly individuals, two of whom were bedridden, alone and helpless. Indeed, when police finally discovered Melissa's body, two of the group home residents were sitting on a couch watching television in close proximity to Melissa's lifeless body.

Jones then drove to Sarah's residence because he decided that he also wanted to kill Sarah and Jason. When he arrived at the residence, Jones looked through a window and saw the children running around inside. Nevertheless, he fired three shots into the

12

door of the home before his gun jammed. Then, as Jones turned to walk back toward his vehicle, Jason shot Jones in the leg. Because that "pissed [him] off," Jones then got in his car and drove it through the front end of the house, all the while "wishing [Jason] was standing by it." Ex. Vol., State's Ex. 23, p. 5. When questioned about his intent toward Sarah, Jones stated that he wanted "to kick her in the face" and that he "probably would have shot her if [he] could have got close to her." Ex. Vol., State's Ex. 23, p. 7. Jones committed these crimes with callous disregard for the lives of six children, including three of his own children. The nature of the crimes, along with the presence of multiple crimes and multiple victims, easily supports the trial court's 103-year sentence.

Jones's character is also far from stellar. Although Jones had never been convicted of a crime prior to the instant offenses, the record reflects that Melissa, Sarah, and Jason had each sought and obtained protective orders against Jones. And on the date of the instant offenses, Jones violated protective orders prohibiting him from having contact with Melissa, Jason, and Sarah. At trial, Sarah testified that Jones engaged in a pattern of repeated and continuing threats of violence against her and their children, and that the pattern continued even after she obtained a protective order. These facts all reflect poorly on Jones's character and support the trial court's sentencing decision. Although Jones repeatedly refers to the fact that he suffers from multiple sclerosis, he has not argued that the disease impairs his mental functioning in any way, and we are at a loss as to how Jones's diagnosis could be understood to have any bearing on his character. For all of these reasons, we conclude that Jones's aggregate 103-year executed sentence is not inappropriate.

13

**Conclusion**

The trial court did not abuse its discretion in sentencing Jones. Jones has waived his claim under Appellate Rule 7(B) and, waiver notwithstanding, Jones's aggregate 103-year sentence is not inappropriate.

Affirmed.

ROBB, J., and BAILEY, J., concur.