**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 21 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRIS M. TEAGLE**
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEMETRUS WEEMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 05A05-1109-CR-513 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BLACKFORD SUPERIOR COURT
The Honorable Nick Barry, Judge
Cause No. 05D01-1103-FD-100

**May 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

STATEMENT OF THE CASE

Demetrus Weems appeals his conviction and sentence for class D felony theft.[1]

We affirm.

ISSUES

1. Whether the prosecutor committed misconduct.

2. Whether the trial court abused its discretion in sentencing Weems.

FACTS

At approximately 7:00 p.m. on March 3, 2011, Jessica O'Hern, a cashier at a Montpelier convenience store, sold Weems two or three one to two-dollar scratch-off lottery tickets. Weems returned to the store approximately one-half hour later. He purchased ten dollars worth of gas at the register before going to talk to an employee working at a Subway restaurant located within the store.

A couple of minutes later, Weems returned to the check-out counter: O'Hern assumed that he had returned to purchase cigarettes. In the meantime, another customer had gotten in line to purchase cigarettes. Knowing what kind of cigarettes Weems smoked, O'Hern "just grabbed them all at the same time" and placed Weems's cigarettes behind the counter. (Tr. 48). When she finished ringing up the first customer's sale, O'Hern started to ring up Weems's cigarettes. As she did so, Weems "walked off back into Subway again . . . ." (Tr. 52). O'Hern therefore voided the sale but did not put the

---

[1] Ind. Code § 35-43-4-2.

2

cigarettes back in the case. O'Hern then left the counter area and, with her back to the counter, made a fresh pot of coffee and cleaned the bakery case. At that time, Weems was the only customer in the store.

Weems was standing at the front counter when O'Hern returned. Weems asked O'Hern whether she "had ever given him his change for his cigarettes . . . ." (Tr. 59). When O'Hern told him that he had not purchased the cigarettes, which she verified by looking at the last ten transactions made at the register, Weems "kind of laughed it off . . . ." (Tr. 60). Without purchasing any cigarettes, Weems left the store and pumped his gas. He did not return to the store that night.

At the end of her shift, O'Hern prepared her "ending shift report," which included tallying the number of lottery tickets sold during her shift. (Tr. 62). O'Hern immediately noticed that one of the twenty-dollar scratch-off tickets had been "ripped in half" and that the bottom half was missing. This "set off an alarm in [O'Hern's] head" because she knew that she had not sold any of those tickets and that she had not ripped the ticket. (Tr. 64). O'Hern also noticed that a second twenty-dollar ticket was missing. O'Hern left a note regarding the missing tickets for her manager, Terry Jordan, before leaving for the night.

When Jordan went through the previous night's receipts the next morning, she realized that the store was "$42.00 short in lottery" tickets and that the cash receipts were short by twenty dollars. (Tr. 109). Jordan verified that one twenty-dollar scratch-off ticket was missing and that the bottom half of another one also was missing. Jordan,

3

however, could not determine whether the store also was missing one two-dollar ticket or two one-dollar tickets because the store sold several of each kind.

Jordan and another employee then reviewed the surveillance tape from the night before. The tape showed Weems "reaching around the counter," (tr. 117), and "ripping off two $1.00 tickets and two $20.00 tickets or a ticket and a half of [a] twenty dollar[]" ticket. (Tr. 119).

On March 16, 2011, the State charged Weems with class D felony theft. On June 27, 2011, Weems, by counsel, filed a motion in limine, seeking to exclude the surveillance tape depicting Weems on March 3, 2011, due to "the limited scope of the footage of the video." (App. 40). The trial court denied the motion.

The trial court held a jury trial on June 29, 2011. During the trial, the jury heard Jordan's testimony regarding the surveillance tape's footage, which depicted only the time period during which Weems took the lottery tickets from behind the counter. Jordan also testified that the store generally keeps surveillance tapes for three months.

Weems subsequently moved for a mistrial, asserting that the State had withheld exculpatory evidence by not providing, upon request, the surveillance tape in its entirety and maintaining that the tape from the night in question no longer existed. Weems argued that upon viewing the tape in its entirety, one "could see if [Weems] paid more than the ten bucks that [O'Hern] says he paid to buy gas and he didn't buy anything else." (Tr. 129). The State asserted that it had requested a copy of the tape but was told that the

4

store no longer had it. The trial court denied Weems's motion, whereupon Weems objected to the admission of the videotape.

Subsequently, the State and Weems filed a stipulation, whereby they stipulated that Weems had entered the store "prior to the videotape and made a purchase or purchases from the store." (App. 42). Prior to admitting the videotape into evidence and playing it for the jury, the trial court read the stipulation to the jury and admonished the jury as follows:

> The State has admitted into evidence a video which will be played for your viewing. You are not to speculate as to the content of what took place before the video recording began and not made part of the recording and further you are not to speculate as to what took place after the recording stopped. You are to consider the content of the recording in conjunction with the testimony and other witnesses provided by the State of Indiana as well as the cross-examination of the State's witnesses by the defendant. You should not form an opinion as to whether the State has proved its case beyond a reasonable doubt until all the evidence has been presented and the case has been submitted to you for deliberations.

(Tr. 156-57).

The trial court also admitted into evidence a videotape of the statement Weems made to police. During the interview, Weems claimed that he had paid for his gas, cigarettes and $42.00 worth of lottery tickets, including two twenty-dollar scratch-off tickets, at the same time. He, however, stated that when he went outside to pump his gas, he realized that O'Hern had not given him the twenty-dollar tickets. He therefore went back inside and asked for the tickets. When O'Hern ignored his request, he admitted to

5

reaching behind the counter and taking the tickets. The jury found Weems guilty as charged.

The trial court held a sentencing hearing on August 30, 2011. According to the pre-sentence investigation report ("PSI"), Weems has a lengthy criminal history, including several class A misdemeanor convictions; a conviction for class C misdemeanor operating a vehicle while intoxicated in 1994; a conviction for class B felony possession of cocaine in 2004; a conviction for class D felony criminal recklessness in 1996; a conviction for class D felony theft in 1998; and a conviction for class D felony auto theft in 1990. The PSI also showed that the State had revoked Weems probation on five occasions.

Furthermore, the PSI reported that while out on bond for the current offense, Weems was arrested for class A misdemeanor operating a vehicle while intoxicated in Dearborn County and convicted of class A misdemeanor possession of marijuana and class C misdemeanor operating a vehicle while intoxicated in Blackford County. The PSI also included an incident report made after Weems was found to be in possession of contraband while in jail after the trial court revoked his bond in the current case.

Weems proffered his employment history as a mitigating circumstance. Weems also preferred the dollar value of the lottery tickets as a mitigator, arguing that it was a small amount. Finding no mitigating circumstances and Weems's criminal history to be an aggravating circumstance, the trial court sentenced Weems to three years.

6

<u>DECISION</u>

We first note that the State has not filed an appellee's brief.

> The obligation of controverting arguments presented by the appellant properly remains with the State. Thus, when the appellee does not submit a brief, the appellant may prevail by making a prima facie case of error, i.e. an error at first sight or appearance. We are nevertheless obligated to correctly apply the law to the facts of the record to determine if reversal is required.

*Mateyko v. State*, 901 N.E.2d 554, 556 (Ind. Ct. App. 2009), *trans. denied*.

1. <u>Prosecutorial Misconduct</u>

Weems frames the issue as whether the trial court "committed error in its denial of [Weems]'s Motion In Limine . . . ."[2] As Weems relies entirely on the holding in *Penley v. State*, 734 N.E.2d 287 (Ind. Ct. App. 2000), however, Weems's argument is more appropriately framed as whether the State improperly withheld evidence, namely the store's surveillance videotape. Weems maintains that, if viewed in its entirety, the tape could have been used "to determine what amount of money exchanged hands at the time of [Weems's] second purchase," and therefore, could have proved that he had paid for the lottery tickets. Weems's Br. at 10.

> A claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor and that the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to

---

[2] We note that such an argument is properly stated as whether error, if any, lies in the admission of the evidence at trial as the trial court's ruling on a motion in limine is not a determination of the ultimate admissibility of the evidence. *Willingham v. State*, 794 N.E.2d 1110, 1116 (Ind. Ct. App. 2003).

which he should not have been subjected. The gravity of peril is measured not by the degree of the misconduct but by the probable persuasive effect on the jury's decision.

*Hyppolite v. State*, 774 N.E.2d 584, 599 (Ind. Ct. App. 2002), *trans. denied*.

To support a claim of prosecutorial misconduct for withholding evidence, the withheld evidence must be material to the defense. *Penley*, 734 N.E.2d 289-90. Evidence is material if it creates a reasonable doubt that did not otherwise exist. *Id.* at 290. We will not find, however, that the State suppressed material information if that information was available to a defendant through the exercise of reasonable diligence. *Williams v. State*, 757 N.E.2d 1048, 1063 (Ind. Ct. App. 2001), *trans. denied*.

In *Penley*, the alleged victim claimed that Penley pointed a gun at him. The responding officer interviewed two witnesses and wrote in her probable cause affidavit that the witnesses verified the alleged victim's version of the incident, but the officer did not include the witnesses' names. The State provided Penley with a copy of the probable cause affidavit but denied that there were any items "'which may be relevant to issues at trial.'" 734 N.E.2d at 289 (citation to the record omitted). Penley filed a motion in limine, seeking to prevent the State from mentioning that two independent witnesses could confirm the alleged victim's version of the incident. The trial court granted the motion. A jury found Penley guilty of pointing a firearm.

After the trial, Penley learned the name of one of the witnesses. The witness later averred that she had not seen a weapon and had, in fact, given her name to the responding

police officer. Penley appealed his conviction, asserting that the State withheld exculpatory evidence.

Finding that a prosecutor is "charged with knowledge of potentially exculpatory evidence which the police are aware," *id*., including knowledge of the information provided by the witness to the responding officer, this court held that the prosecutor withheld such evidence. This court further found the evidence to be material because "the testimony of an independent eyewitness who did not see a gun could have created a reasonable doubt that did not otherwise exist," particularly given that the State's case hinged entirely on eyewitness accounts. *Id*. at 290. We find *Penley* distinguishable from this case.

Here, there is nothing in the record to suggest that the prosecutor withheld potentially exculpatory evidence. Weems was aware of the tape's existence; thus, we cannot say that the State suppressed any information. Furthermore, the nature of the videotape and what it would depict is too tenuous to deem it potentially exculpatory.

Finally, we cannot say that the State's failure to obtain the complete videotape placed Weems in grave peril, where the jury heard O'Hern's testimony regarding Weems's actions; Weems extensively cross-examined O'Hern regarding the incident; Jordan testified that the store was missing lottery tickets and was short in cash receipts; and the jury viewed Weems's statement to the police, during which he gave his account of the transaction.

Given that the evidence would not have created a reasonable doubt that did not otherwise exist, we cannot say that it was material evidence. Accordingly, we find no prosecutorial misconduct.

2. Sentencing

Weems also asserts that the trial court abused its discretion in sentencing him. Specifically, he contends that the trial court failed to find his employment history and participation in a substance abuse program while in jail, awaiting sentencing, as mitigating circumstances.

Sentences are within the trial court's discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). A sentence that is within the statutory range is subject to review only for an abuse of discretion. *Id.* A trial court may abuse its discretion if the sentencing statement

> explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law.

*Id.* at 490-91.

> The failure to find a mitigating circumstance clearly supported by the record may imply that the trial court overlooked the circumstance. The trial court, however, is not obligated to consider "alleged mitigating factors that are highly disputable in nature, weight, or significance." The trial court need enumerate only those mitigating circumstances it finds to be significant. On appeal, a defendant must show that the proffered mitigating circumstance is both significant and clearly supported by the record.

*Rawson v. State*, 865 N.E.2d 1049, 1056 (Ind. Ct. App. 2007) (internal citations omitted), *trans. denied*.

a. *Employment history*

Weems argues that the trial court abused its discretion in failing to find his employment history as a mitigator, where "he had been gainfully employed for the year he had resided in Montpelier[.]" Weems's Br. at 12. We cannot agree.

First, employment is not necessarily a significant mitigating factor. *See Newsome v. State,* 797 N.E.2d 293, 301 (Ind. Ct. App. 2003) ("Many people are gainfully employed such that this would not require the trial court to note it as a mitigating factor[.]"), *trans. denied.* Second, during the sentencing hearing, Weems acknowledged he was gainfully employed "for the most part[.]" (Tr. 203). Thus, his employment history was not significant. We therefore find no abuse of discretion in the trial court's failure to find Weems's employment history as a mitigating circumstance.

b. *Efforts at rehabilitation*

Weems also contends that the trial court improperly overlooked his attempt at rehabilitation while in jail, awaiting sentencing. "[P]ositive adjustment to incarceration is relevant mitigating evidence and may not be excluded from the sentencer's consideration." *Wilkes v. State*, 917 N.E.2d 675, 690 (Ind. 2009), *reh'g denied*, *cert. denied*, 131 S. Ct. 414 (2010). "This is an application of the general rule that 'the sentencer may not refuse to consider . . . any relevant mitigation evidence.'" *Id.* (quoting *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986)).

11

In this case, Weems presented as a mitigating circumstance his participation in a substance abuse program while incarcerated for the instant offense. Weems, however, presented no evidence regarding the nature of this program or whether he had completed it. Furthermore, according to the PSI, a search of Weems's cell on July 19, 2011, revealed that he possessed contraband; namely, "hooch," which is alcohol made from fermented fruit or fruit juice. (PSI App. 25).

We therefore cannot say that Weems has presented a significant mitigating circumstance supported by the record. Accordingly, we find no abuse of discretion in failing to find this to be a mitigating circumstance.[3]

Affirmed.

RILEY, J., and NAJAM, J., concur.

---

[3] Weems also notes that during the sentencing hearing, he proffered the dollar amount of the lottery tickets as a mitigating circumstance. On appeal, however, Weems does not argue that the trial court failed to find this a mitigator. He therefore has waived any argument regarding the trial court's finding of this circumstance. *See* Ind. Appellate Rule 46(A)(8)(a) ("Each contention must be supported by citations to the authorities . . . ."); *see also Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.